Henry E. HUNT, Appellant,

v.

Louis S. NELSON, Warden, California State Prison, San Quentin, California, Appellee.

No. 24612.

United States Court of Appeals, Ninth Circuit.

March 23, 1971.

George A. Cumming, Jr., (argued), San Francisco, Cal., for appellant.

Robert R. Granberg, Deputy Atty. Gen., (argued), Evelle J. Younger, Atty. Gen., Michael J. Phelan, Deputy Atty. Gen., San Francisco, Cal., for appellee.

Before DUNIWAY, ELY and KILKENNY, Circuit Judges.

PER CURIAM:

After exhaustive evidentiary hearings, the district court entered an order denying appellant's petition for a writ of habeas corpus. He appeals. We affirm.

BACKGROUND

For approximately two months prior to January 25, 1963, the appellant was living in the same house with two women, Ernestine and Betty Pearson. Ernestine, with whom appellant had established a commonlaw relationship, was the mother of three children by a previous commonlaw affair. Betty, only eighteen years of age, had four children, three by the brother of Ernestine. Some time prior to January 25, 1963, Ernestine, without success, attempted to terminate her relationship with appellant. The morning of that day, they had a heated argument which ended when he jabbed a fork into her neck causing her to bleed. When he left the house, he stated to her, "You'll be sorry, black bitch." At about 2:30 a.m., appellant returned to their home and was admitted by Betty. Some time after Betty went to sleep, the appellant, according to his statement to the police, which he later denied, went to the back bedroom, set fire to a curtain and departed through the back door. Five children were asleep, the oldest of which was the five year old daughter of Ernestine. All five were sleeping in the same bed. Ernestine's oldest daughter aroused Betty, who saved the children, with the exception of her own four year old daughter and Ernestine's seven month old son, both of whom were burned to death.

Appellant was immediately apprehended by police and after interrogation, signed a statement confessing to setting the fire. He was indicted in state court for first degree murder. Later, on May 1, 1963, he appeared in court and entered pleas of guilty to two counts of second degree murder. Prior to entering these pleas, the appellant, with his attorney, on many occasions, discussed the available alternate pleas. There is substantial evidence of considerable plea bargaining between appellant's then attorney and the prosecuting attorney.

After an exhaustion of remedies in the California state courts, appellant sought habeas relief in the district court. The perceptive findings and conclusions of the trial court consume approximately ten full pages of the record.

CONTENTIONS

Appellant contends:

(1) That his pleas of guilty are vulnerable because they were triggered by a coerced confession.

(2) That appellant was denied the right to counsel because his attorney was not present when he met with the

prosecuting attorney to discuss the case.

(1) A detailed discussion of the testimony[1] adduced at the hearings would add nothing to the validity of our ultimate conclusions. Suffice to say, there is substantial evidence to support the findings of the lower court that appellant's confession was not the result of coercive pressure. True enough, on some major issues, the testimony of the appellant directly contradicted the testimony of the officers. The credibility of the witnesses and the weight to be given their testimony is the function of the trier of the facts.

Our examination of the record convinces us that the trial court's determination of the historical facts is not clearly erroneous. Drawing our own conclusions from those facts, we find that appellant's confession was voluntary. Jones v. United States, 423 F.2d 252, 254 (9th Cir. 1970).

(2) Approximately one week prior to the entry of the guilty pleas, the appellant, with the knowledge, consent and encouragement of his attorney, met with the district attorney and two police officers. By pre-arrangement, known to appellant, his attorney was not present. Appellant insists that Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), forbids such conduct. Massiah, and similar cases, is to be distinguished in two significant areas. First, the meeting in Massiah produced an incriminating statement which was used in trial against the defendant. The meeting in the case before us produced no such incriminating evidence. The effect of the meeting, if any, was operative only on appellant's mind.

The second important distinction between our facts and those in Massiah is the absence here of any type of deception. In Massiah, a co-defendant, unknown to the defendant, had decided to cooperate with the government and obtained a statement from him. In several places, the Massiah court emphasized the "surreptitious means" of obtaining the statements and that they were obtained "without petitioner's knowledge." Here, no purpose was hidden, no one assumed a disguise. Nothing in the record indicates that the district attorney uttered coercive threats or made any promises. Appellant and appellee agree that the purpose of the meeting was to explain the advantages of entering pleas of guilty to murder in the second degree. The record indicates that the district attorney was aware of the usual risk which a trial presents to any prosecution and, more importantly, it appears that he was opposed to the death penalty and was reluctant to undertake a proceeding in which a death sentence was probable. He explained to appellant, that in the light of the confession, a conviction of first degree murder and a death sentence were probable, while a guilty plea to second degree murder would involve an indeterminate sentence of five years to life. Appellant, however, stood his ground, asserted his innocence and refused to change his plea. We agree with the lower court that the statements of the district attorney did no more than clarify the realities and alternatives facing the appellant and that if he was in any way motivated by the encounter, it was only the motivation which comes from an awareness of the truth.

We also agree with the court below that the absence of counsel at the meeting had no effect whatsoever on the entry, a full week later, of the bargained plea of guilty. Again, we emphasize that the court passed on the issues of fact and inferences to be drawn therefrom. Other cases cited by appellant's counsel are no more persuasive than Massiah.

Having concluded that appellant's confession was freely and voluntarily made and that his meeting with the district attorney in the absence of his counsel did not render his guilty pleas involuntary, or render them constitutionally in-

1. In excess of 400 typewritten pages.

valid, we need not discuss the impact, if any, of McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); Mackey v. Oberhauser, 437 F. 2d 120 (9th Cir., 1971), or comparable cases, on the record before us.

Affirmed.