**Daniel William ALESI, Petitioner-Appellee,**

v.

**Walter E. CRAVEN, Warden, Respondent-Appellant.**

**No. 24821.**

United States Court of Appeals, Ninth Circuit.

April 1, 1971.

Rehearing Denied May 14, 1971.

Frederick Millar (argued), Deputy Atty. Gen., Evelle J. Younger, Atty. Gen., William E. James, Asst. Atty. Gen., Philip C. Griffin, Deputy Atty. Gen., Thomas Kerrigan, Deputy Atty., Los Angeles, Cal., for respondent-appellant.

Gabriel A. Gutierrez (argued), of Sillas & Castillo, Los Angeles, Cal., for petitioner-appellee.

Before BARNES, HUFSTEDLER and TRASK, Circuit Judges.

HUFSTEDLER, Circuit Judge:

This is an appeal from an order vacating Alesi's state court conviction for selling heroin and possessing marihua-

na.[1] His conviction had been affirmed by the California Supreme Court prior to his seeking federal relief in his habeas petition. (People v. Alesi (1968) 67 Cal. 2d 856, 64 Cal.Rptr. 104, 434 P.2d 360.) The foundation of the district court's order was its finding that inculpatory statements made by Alesi to a probation officer were involuntary and its conclusion that the admission of those statements to impeach Alesi during the state court trial was not harmless beyond a reasonable doubt.

The statements in question arose in the context of an abortive plea bargain. In 1962, Alesi was charged with the offenses for which he was later convicted and with a prior felony. After trial had commenced, the state trial judge called the prosecutor and defense counsel into chambers and urged Alesi's commitment to the California Narcotics Rehabilitation Center, assuming that the prosecutor would be willing to dismiss the prior and that the Center's Director would accept Alesi for treatment. The district attorney then agreed to dismiss the prior and defense counsel agreed that Alesi would plead guilty to one count of selling heroin. Alesi initially rejected the bargain, claiming that he was innocent, but after defense counsel exerted strong pressure upon him,[2] Alesi relented and entered a guilty plea. Defense counsel had told Alesi that he had to anticipate that the probation officer would insist upon Alesi's admitting addiction as a condition precedent to acceptance at the Center. The probation officer fulfilled defense counsel's prophecy. Alesi admitted that he had possessed the marihuana and that he was addicted to heroin. He also gave the probation officer his version of the heroin sale.

The Center rejected Alesi on the ground that he was on parole, and he was returned for sentencing. Alesi moved to vacate his guilty plea, the court vacated the plea upon a finding that it was involuntary, and stated: "If the defendant wants to be placed back in a status quo before he changed his plea, we will do so in every respect." Upon Alesi's request, the court also relieved defense counsel of his representation and appointed a new lawyer for him.

Alesi's second trial before a different judge was held without any pretrial hearing upon the voluntariness issue. Alesi testified in his own defense, and the prosecutor sought to impeach him by questioning him about the statements he had made to the probation officer. Alesi repeatedly asserted that his statements had been made under duress; those assertions were stricken. On redirect examination defense counsel tried to lay the foundation for the involuntariness claim by bringing out the guilty plea that anteceded the inculpatory statements. The plea of guilty was thus introduced, but defense counsel was not

---

1. Because Alesi was serving a sentence on a prior conviction, the court did not order Alesi's immediate release.

2. At the hearing to vacate the guilty plea, Alesi's counsel stated:

   "In view of the severity of punishment for a heroin sale with a prior narcotic conviction of any kind, the defendant being an admitted addict, was persuaded and even induced to withdraw his plea of not guilty, enter his guilty plea on the basis of representations which I made to him, and which were themselves predicated upon conversations which I had with Your Honor and the other counsel in chambers.
   " * * * *

   " * * * * [T]here was a strong force exerted by me personally on the defendant to withdraw his plea of not guilty and enter his plea of guilty, because I saw the possibility, one, of getting the marijuana case dismissed; two, of avoiding what I thought the probability was of a ten year to life sentence. of which he would have to do ten years; and three, the possibility presented itself that he would be committed to the addiction program over in Riverside County and might be in a position to cure a habit that has up to this point pretty well ruined his life.

   "To me it seemed like not only the ideal disposition of the case, but almost a miraculous one and so I did exert strong pressures."

permitted to show the circumstances of the plea.

In upholding the conviction, the California Supreme Court reasoned that Alesi's damaging admissions were not involuntary because they had been made under "the guiding hand of counsel." (People v. Alesi, *supra,* 67 Cal.2d at 861, 64 Cal.Rptr. at 107, 434 P.2d at 363.) The factual record before the California Supreme Court and that made at the evidentiary hearing before the district court were quite different. Upon facts first brought out at the federal hearing, the district court had ample evidence from which to find that Alesi's statements had been coerced: Alesi's lawyer *did not exercise a guiding hand;* he had given his client a forceful shove.

The pressure he exerted had been set in motion by the first trial judge. The trial judge's active entry into the plea bargaining was well intentioned, but when the move was made, the trial judge did not know the facts that ultimately doomed the pact.[3] When that judge vacated the plea and tried to restore Alesi to the position he had occupied before the plea was taken, the judge recognized that the plea bargaining atmosphere had been coercive.[4] The plea, the challenged statements, and the plea bargain are inextricably intertwined.

From the district court's finding of involuntariness of the statements, it follows that the state court erred in admitting them against Alesi, either directly or by way of impeachment. (*E.g.,* Haynes v. Washington (1963) 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513; Lynumn v. Illinois (1963) 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922; Harrold v. Territory of Oklahoma (8th Cir. 1909) 169 F. 47; State v. Turnbow (1960) 67 N.M. 241, 354 P.2d 533, 89 A.L.R.2d 461, Anno. at 478.)

Harris v. New York (1971) 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1, a case that came down after oral argument, is not to the contrary. *Harris* held that statements taken during custodial interrogation without *Miranda* warnings could be used by the prosecution to impeach the declarant when he testifies at his later criminal trial. That the Court did not intend to reach beyond the *Miranda* setting to touch an involuntary or coerced confession is apparent from its observation that: "It does not follow from *Miranda* that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, *provided of course that the trustworthiness of the evidence satisfies legal standards."* (401 U.S. at 224, 91 S.Ct. at 645. [Emphasis added.]

3. During the hearing on Alesi's motion to vacate his plea, the first trial judge stated:

"However, the possibility of his getting treatment certainly must have been in his mind and certainly it was in the Court's mind because in accepting the plea of guilty and in setting aside the prior, it was in the Court's mind that the community would be benefitted by seeing that this defendant got treatment because the testimony up to the point that I heard it, I think indicated that the main reason for his participating in the transaction was so that he could get a small bit of narcotics for his own uses rather than financial gain.

"So perhaps it could be said that the Court's actions apparently substantially corroborated his hopes or beliefs that he would get treatment rather than himself a straight prison sentence, and I am free to say I had thoughts along the same line, that is, that he might be accepted for treatment, because I did inquire and looked up the law and found that the law would permit his treatment."

4. The court stated:

"[T]he discussions certainly did, with regard to his change of his plea, the *discussion certainly did* revolve around this question of whether or not, if he changed his plea, he might have a chance to get the treatment program and whatever representations or understanding he may have had were certainly, shall we say, to follow the language of People vs. Gilbert, 'apparently substantially corroborated by acts or statements of a responsible state official.' "

**978**

Alesi's statements to his probation officer included a confession on one charge and incriminating admissions on the other charges. We cannot distinguish an admission from a confession. (Ashcraft v. Tennessee (1946) 327 U.S. 274, 66 S. Ct. 544, 90 L.Ed. 667.) Both were coerced. Nothing in *Harris* purports to undercut the many decisions that recognize the unreliability of involuntary confessions. (*E.g.*, Stein v. New York (1952) 346 U.S. 156, 192, 73 S.Ct. 1077, 97 L.Ed. 1522; J. Wigmore, 3 Evidence (Chadbourne Rev. 1970) § 822.)

We decline appellant's invitation to return the case to the California courts before granting relief. We can see no useful purpose in prolonging the litigation and expending even greater quantities of judicial time upon this case. Alesi exhausted his state remedies; he is entitled without further delay to the relief he has won.

The Order vacating the state court's decision is affirmed.