Raymond M. HAMILTON, Petitioner,

v.

Walter E. CRAVEN, Warden of Folsom State Prison, Represa, Respondent.

No. 51247.

United States District Court, N. D. California.

Aug. 2, 1971.

Michael E. Smith, Berkeley, Cal., for petitioner.

Evelle J. Younger, Atty. Gen. of Cal., Eric Collins, Robert Granucci, Deputy Attys. Gen., San Francisco, Cal., for respondent.

## MEMORANDUM OPINION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

ZIRPOLI, District Judge.

Raymond Hamilton brings this habeas corpus petition pursuant to 28 U.S.C. § 2241 et seq., to secure his release from an allegedly unconstitutional confinement. On September 4 and 16, 1970, this court held an evidentiary hearing. The facts surrounding petitioner's conviction, and the substance of the testimony at his two trials are fully set out in the petition, in People v. Hamilton, 55

Cal.2d 881, 13 Cal.Rptr. 649, 362 P.2d 473 (1961), and People v. Hamilton, 60 Cal.2d 105, 32 Cal.Rptr. 4, 383 P.2d 412 (1963). Nothing further would be served by repeating them in detail here. Relevant facts will be referred to when necessary.

Petitioner asserts the following contentions in support of his application for a writ of habeas corpus:

1. While in jail, a private conversation between petitioner and a personal friend was surreptitiously recorded by the police and later used against him at trial, in violation of due process of law;

2. An offer by petitioner to plead guilty while in jail awaiting trial on a capital charge was later introduced into evidence against him, in violation of due process of law;

3. The prosecutor deliberately and repeatedly flouted petitioner's right to be confronted with the witnesses against him, to be accorded a fair trial, and to enjoy equal protection of the laws;

4. Prospective jurors with conscientious scruples against the death penalty were excused for cause from the guilt phase of petitioner's trial, in violation of his right to an impartial jury; and

5. Petitioner further argues that these errors constitute federal constitutional error and are not harmless beyond a reasonable doubt within the meaning of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966).

■ Respondents argued that the court may not adjudicate petitioner's claim since he failed to exhaust his presently existing state remedies as to his second contention. Failure to exhaust state remedies as to one ground for relief in a petition stating several grounds warrants a district court's denial of the writ. Howard v. Craven, 306 F.Supp. 730, 732 (C.D.Cal.1969).

*Procedural Background and Exhaustion*

■ Petitioner pled not guilty to an information charging two counts of murder. He was tried by a jury, convicted of first degree murder and sentenced to death on both counts. He appealed directly to the California Supreme Court, which reversed his convictions. People v. Hamilton, 55 Cal.2d 881, 13 Cal.Rptr. 649, 362 P.2d 473 (1961). Petitioner was then retried by a jury and was again convicted of first degree murder. On February 14, 1962, he was sentenced to life imprisonment on count one and to the death penalty on count two. He again appealed directly to the California Supreme Court, which affirmed his convictions but reversed the death sentence. People v. Hamilton, 60 Cal.2d 105, 32 Cal.Rptr. 4, 383 P.2d 412 (1963). On December 30, 1964, petitioner was resentenced by the trial court to life imprisonment on count two.

Petitioner has applied three times for a writ of habeas corpus to the California Supreme Court. The first petition, in Crim. No. 10116, was denied on November 15, 1966, Justice Peters dissenting. The second, in Crim. No. 10850, was denied on February 21, 1967, Justice Peters again dissenting. The third, in Crim. No. 12190, was denied on November 20, 1968, without opinion. Following the second denial, petitioner sought a writ of certiorari in the United States Supreme Court. The petition was denied on October 23, 1967, Hamilton v. California, 389 U.S. 921, 88 S.Ct. 243, 19 L.Ed. 2d 271 (1967), Justices Fortas, Douglas and Marshall being of the opinion that certiorari should be granted.

The second claim, the subject of any possible exhaustion deficiencies, was presented to the California Supreme Court on direct appeal, but only as a claim under state law. The court ruled in petitioner's favor, but held that the error was harmless as a matter of state law. People v. Hamilton, 60 Cal.2d 105, 32 Cal.Rptr. 4, 383 P.2d 412 (1963). This claim was subsequently presented to the United States Supreme Court. From the dissenting opinion above cited, it appears that the dissenting justices considered the claim as one under federal law, and questioned whether the admission of defendant's (petitioner's) bar-

gained offer to plead guilty was a *per se* fourth amendment violation and whether it had been (or should have been) subject to the same fifth amendment test of voluntariness as applies to confessions. Although the majority may have voted to deny certiorari due to petitioner's failure to present this federal claim to state courts, it is impossible to conclude such as a matter of law. Subsequently all of petitioner's claims, with the possible exception of the second claim, were presented to the California Supreme Court in petitioner's most recent petition. It is that possibility with prompts this analysis of exhaustion.

Although this court does not have before it the entire third petition to the California Supreme Court, it does have page 35 of that petition, which clearly alleges that petitioner was raising constitutional questions with regard to the introduction of his withdrawn offer to plead guilty. On this page, as well as on three earlier pages of the petition, petitioner specifically requested a hearing to adduce further facts if the court felt more evidence was required.

This court believes that Castro v. Klinger, 373 F.2d 847 (9th Cir. 1967), is dispositive on the question of exhaustion. In *Castro*, petitioner after losing on direct appeal in the District Court of Appeal, filed an original petition for habeas corpus in the California Supreme Court. This petition was denied without opinion. Petitioner then filed a petition in United States District Court. This petition was denied for failure to exhaust state remedies. Subsequently, petitioner filed a second petition in federal court, alleging an intervening denial by the California Supreme Court of a petition for habeas corpus. The district court again denied for failure to exhaust state remedies.

The Court of Appeals for the Ninth Circuit reversed the district court on the question of exhaustion. Without either state court petition before it, the court concluded that given the California Supreme Court's inherent power to pursue factual matters by way of remand to a lower court or appointment of a special master, the district court should not speculate as to why the Supreme Court denied the petition, but rather should assume it had done so on the merits.

Here, in setting out his fourth and fifth amendment claims to the California Supreme Court, petitioner specifically requested an evidentiary hearing to supplement the factual record. The Supreme Court had the power to order such a hearing. It failed to do so. What reason prompted the Supreme Court to deny relief without holding a hearing is not a proper subject of speculation for this court. As Judge Ely said in *Castro:*

"From our standpoint, the failure of the California court to reveal the basis of its denial, whether substantive or procedural, is unfortunate. We cannot, however, by indulging in speculation, foreclose appellant's right to a determination of his claim that a substantial federal right has been infringed. In this case, the right, as well as the duty, of making the first determination as to the validity of appellant's claim of coercion was vested in the courts of California. From the record, we cannot discern that the right has been exercised or the duty performed." Castro v. Klinger, 373 F.2d 847, 850 (9th Cir. 1967).

■■ Since habeas corpus is an equitable remedy, Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and the exhaustion doctrine one of comity and not jurisdiction, Bowen v. Johnston, 306 U.S. 19, 27, 59 S.Ct. 442, 83 L.Ed. 455 (1939), and further, since habeas corpus is to be administered with flexibility and initiative, Harris v. Nelson, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969), unencumbered by any technical considerations, Miller v. Overholser, 92 U.S.App.D.C. 110, 206 F.2d 415 (1953), with a liberal judicial attitude, Stewart v. Overholser, 87 U.S.App.D.C. 402, 186 F.2d 339 (1951), it would only be fair to conclude that the California Supreme Court may have in substance decided this precise issue on

the merits, Castro v. Klinger, *supra.* Since petitioner has had two direct appeals and three writs of habeas corpus to the California Supreme Court as well as a petition for certiorari before the United States Supreme Court, it is this court's opinion that denying the petition on exhaustion grounds is not disposing of the matter "as law and justice require."

### Petitioner's Offer to Plead Guilty

It is undisputed that on August 14, 1959, Inspector Lloyd Jester of the Berkeley Police Department had a conversation with petitioner. It is also undisputed that petitioner was not warned that he had a right to remain silent, to have his attorney present and that anything he said might be used against him.[1] It is also uncontradicted that Inspector Jester told petitioner that the conversation was "off the record." Finally, it is uncontradicted that there were discussions about petitioner's giving evidence regarding alleged narcotics activities of a third party. At this point, versions differ.

Inspector Jester testified at the evidentiary hearing that he came to see petitioner in response to a note requesting a meeting sent to him by petitioner. Assistant District Attorney Baldwin testified that he had secured permission from petitioner's attorney to have Jester visit petitioner in response to the note. Jester testified that he never threatened petitioner with a vigorous prosecution by Assistant District Attorney Frank Vuhota or in any other manner. Finally, Jester testified that petitioner offered to plead guilty in exchange for a life sentence to be imposed by Judge Agee, which offer Jester rejected. After his meeting, Jester prepared a typed report in substance repeating the above testimony. This report, in conjunction with Jester's testimony, was admitted in evidence at the state trial as proof of petitioner's offer to plead guilty.

Petitioner testified in direct contradiction to these facts. He testified that he never sent a note to Jester or anyone in the sheriff's or district attorney's office, that Jester initiated the meeting, that Jester never discussed with him any approval of the meeting by petitioner's attorney, that Jester repeatedly threatened petitioner with a vigorous prosecution and indeed a prosecution aimed at a sentence of death in the gas chamber unless petitioner gave evidence regarding the previously mentioned narcotics activity. Finally, petitioner denies ever offering to plead guilty.[2]

The testimony of the two principals is thus in direct conflict on the various elements that might constitute coercion. However, there is relevant testimony by third parties as to these elements.

(a) Initiation of the meeting: Jester testified that he responded to a note sent by petitioner, while petitioner alleges that he never sent any note or in any other way requested a meeting. Sergeant Smith, then custodian of the Alameda County Jail, on duty at the time in question, testified that he had no recollection of petitioner giving him a note for Inspector Jester or any other member of the district attorney's staff, that his records would reflect such a request had it been made, that his records do not reflect such a request, and that he does not recall a conversation with Inspector Jester concerning a request from petitioner. He further testified that under the procedures then in existence, had a member of the district attorney's staff represented to him that a prisoner's counsel had approved a meeting between a prisoner and the staff

---

1. This conversation and the subsequent conviction occurred well before the Supreme Court's decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Had it been post-*Miranda*, of course, these failures of themselves would have warranted relief.

2. The fact that petitioner denies ever offering to plead guilty does not preclude his challenging that the alleged offer to plead was coerced. *Cf.* Lee v. Mississippi, 332 U.S. 742, 68 S.Ct. 300, 92 L.Ed. 330 (1947).

member initiated by the district attorney's office, that staff member would be permitted to see the prisoner. Such a representation would not have to have been in writing, and there would have been no record kept of the visit.[3]

In substance, Smith testified that he has no recollection, either personal or recorded, of any request or note from petitioner, and that under the procedures then in effect, Inspector Jester could have seen petitioner on his own initiative without recording such a visit for the records.

Attorney for respondent represented to the court that after diligent search he has been unable to locate the alleged note from petitioner.

(b) Securing permission of petitioner's counsel for the meeting: There is a dispute as to whether Jester secured the permission of petitioner's counsel for such a meeting, regardless of who initiated it. Inspector Jester's report does not reflect that he had received permission from petitioner's attorney, but rather that he had received permission from Assistant District Attorney Baldwin. Baldwin testified that he had a "very vague" recollection that he secured oral permission from petitioner's counsel. John Nunes, then public defender representing petitioner, testified by deposition that he could recall no such conversation with Baldwin either giving or withholding approval for a representative of the district attorney's office to meet with petitioner. Finally, Inspector Jester testified that he recalled seeing Baldwin talking with a deputy from the public defender's office, but—although he was aware that Nunes represented petitioner—he could not recall whether Baldwin was talking with Nunes or another deputy.

■■ An offer to plead guilty must be tested against the same constitutional guidelines as a confession or any other incriminating statement. While the Supreme Court, in North Carolina v. Al-

ford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed. 2d 162 (1970), established a rule which might have precluded an attack for lack of voluntariness were the guilty plea actually entered in open court, this same rule cannot be applied to withdrawn offers to plead guilty. The offer to plead guilty, at the time it is entered, represents an "admission that he committed the crime charged against him and his consent that judgment be entered without a trial of any kind." North Carolina v. Alford, *supra* at 32, 91 S.Ct. at 164. But the guilty plea only rises to this dignity when it is entered in open court, under the questioning of the judge, after the defendant has either admitted his guilt, or where, though continuing to deny his actual guilt in spite of his guilty plea, the defendant is confronted with sufficient unrefuted evidence to convince the judge that there is actual guilt. North Carolina v. Alford, *supra* at 37–38, 91 S.Ct. 160.

■ None of these factors are present when a defendant, subsequent to an offer to plead guilty, concludes that his interests are best served by withdrawing his offer and going to trial. By exercising his constitutional rights inherent in a trial by jury, the defendant puts the state to the test of proving his guilt beyond a reasonable doubt. Whatever factors motivated him to originally offer to plead guilty can only be assumed to exist no longer or to have been sufficiently overcome by other factors leading to a change of heart. When entered by the defendant as a waiver of all his constitutional rights inherent in a trial by jury, a guilty plea represents a calculated desire to engage in a course of conduct which the defendant has concluded is in his best interests and a willingness to meet the consequences which flow from such conduct. But an offer to plead guilty as tendered by the petitioner in this case, which is subsequently withdrawn (never entered) represents a course of conduct that the defendant, upon further reflection, has

---

3. Smith further testified that under present procedures, there would be a record of the visit.

concluded is not in his best interests. At the time of the trial, the withdrawn offer to plead guilty is devoid of the legal consequences set forth in Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1969), and more closely resembles a confession subsequently disavowed. The impact on a jury of a statement that the defendant had offered to plead guilty is apparent. "There is, in reality, no way in which the jury can be persuaded that the ugly inference of guilt is not to be drawn from his statement, however equivocal may have been his intent in making it." Hamilton v. California, 389 U.S. 921, 88 S.Ct. 243, 19 L.Ed.2d 271 (1967) (dissent from denial of certiorari).

Had petitioner pled guilty in open court prior to his trial and later withdrawn his plea on the ground that it was constitutionally involuntary, it is clear that as a matter of constitutional law, the prior plea could not be introduced against him. White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1962); Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1962); Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1926). Had petitioner consistently pled not guilty and at his trial had an involuntary confession introduced against him, he would be entitled to relief. See, e. g., Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1965).[4] It is irrelevant to the constitutional principles involved, and would be exalting form over substance, to hold that an offer to plead guilty is not a confession because it does not recite specific details of the offense. Likewise, it would be illogical to hold that a jury would react any differently to a defendant's assertion of his own guilt made at a preliminary hearing than it would to an assertion made a week or two prior to trial. The impact is the same and the distinctions are distinctions without differences. Cf. Alesi v. Craven, 440 F.2d 975 at 977 (9th Cir. 1971).

Petitioner's allegations fall squarely within the purview of the recent Supreme Court decision of Procunier v. Atchley, 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971). Treating his offer to plead guilty as a confession, he has alleged facts, which if true, would render his offer involuntary. In substance, he has alleged that Inspector Jester, on his own initiative, with full knowledge that petitioner was represented by counsel, approached petitioner without the knowledge and consent of his attorney, without advising him of his right to have his attorney present and that statements made by him might be used against him, told him that the discussion was "off the record," and proceeded to threaten petitioner with a vigorous prosecution directed toward a death sentence[5]—the horrors of which he vividly described—unless petitioner pled guilty and gave evidence in an unrelated matter. Such allegations, if true, would render the statement involuntary.[6] The court need not pass

---

4. Introduction of an involuntary confession requires relief regardless of the substantiality of other evidence of guilt. There is no harmless error rule when an involuntary confession is involved. Lynumn v. Illinois, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963); Payne v. Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1957). See Chapman v. California, 386 U.S. 18, 26, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966).

5. The record suggests that on several occasions prior to the August 14, 1959 meeting, petitioner had been threatened with the death penalty if he did not confess. Without suggesting either trial strategy to petitioner or parameters of relevance to the state courts, it would appear appropriate on remand to consider the extent to which such prior threats, if true, contributed to the involuntariness of petitioner's alleged offer to plead guilty.

6. Fikes v. Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246 (1956) (voluntariness of confession judged by "totality of circumstances"). See also Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897) (confession induced through threats or promises, no

upon these allegations and indeed does not in this memorandum opinion pass on their truth or falsity. This court need not decide the question of voluntariness beyond holding that the allegations, if true, would render the offer involuntary. Procunier v. Atchley, *supra.*

 It is clear from the transcript of petitioner's second trial that the question of the alleged offer was treated strictly as an evidentiary matter, in the nature of an admission against interest. It was not treated as a confession, and thus the procedures required by Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1963), were never employed. Consequently, the writ must be granted.[7] Pursuant to the procedures established in Jackson v. Denno, *supra,*

It is hereby ordered that the petition for a writ of habeas corpus is granted and petitioner is to be released from the custody and control of respondents within 60 days from the date of entry of this order unless, within such time, the State of California indicates its intention to grant petitioner a new trial or an

evidentiary hearing on the issue of voluntariness and the date of such a hearing or trial. Should it be determined on a subsequent hearing that the confession was involuntary, the State of California must afford petitioner a new trial, or release him from custody.

matter how insubstantial, is an involuntary confession) ; Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) (Rationale of *Bram* made applicable to the states through the 14th amendment) ; Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966) (failure to warn defendant of right to counsel, right to remain silent, and that any statements made might be used against him "is a significant factor in considering the voluntariness of statements later made"). *Cf.* Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959) (introduction of incriminating statements made by defendant, initiated by the state, without presence or permission of defendant's counsel, when police officers knew defendant was represented by counsel, was denial of right to counsel). *Compare* Hunt v. Nelson, 440 F.2d 58 at 60 (9th Cir. 1971).

7. Having granted relief on petitioner's second claim, there is no need to pass on petitioner's remaining issues. Should the necessity arise, petitioner may renew these claims. However, it would appear that petitioner's first contention has in substance been decided adversely to him

by the decision in Procunier v. Atchley, *supra.* The Supreme Court has recently summarily reversed the death penalty in several cases pending before it, apparently on grounds relating to petitioner's "scrupled juror" argument (an extension of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)) ; *see* 39 USLW 3566–67 (1971). Should the necessity arise, this court will entertain further briefs on the effect of these reversals on petitioner's case. The court specifically declines to pass on petitioner's claim of denial of a fair trial at this time. The other issue raised by the dissenters from the denial of certiorari in this case, that is, whether or not "plea bargaining" discussions can ever be constitutionally admissible, see Alesi v. Craven, 440 F.2d 975 (9th Cir. 1971), this court does not reach. Although this court is of the opinion that such discussions, which have become an integral part of the criminal process, are not admissible, in this case, since Inspector Jester acted more as an investigating officer than as a district attorney, it is more reasonable to characterize petitioner's alleged statements as a confession than as plea discussions.