Joseph William WADE, Petitioner and Appellant,

v.

STATE OF CALIFORNIA, Respondent and Appellee (two cases).

Nos. 25061, 25073.

United States Court of Appeals, Ninth Circuit.

Oct. 4, 1971.

As Modified on Denial of Rehearing Nov. 22, 1971.

John E. Sparks (argued), of Brobeck, Phleger & Harrison, San Francisco, Cal., for appellant.

Charles R. B. Kirk, Deputy Atty. Gen. (argued), Evelle J. Younger, Cal. Atty. Gen., John T. Murphy, Deputy Atty. Gen., San Francisco, Cal., for appellee.

Before CHAMBERS and BARNES, Circuit Judges, and JAMESON, District Judge.*

* Honorable William J. Jameson, Senior United States District Judge, District of Montana, Billings, Montana, sitting by designation.

BARNES, Circuit Judge:

This two-pronged appeal arises from the granting in the District Court of a petition for a writ of habeas corpus and from the remedy ordered. The writ ordered Wade, a state prisoner, released from custody arising out of his 1957 conviction after a plea of guilty to the crime of sodomy, unless the State of California granted him a new hearing within 30 days. This was on the ground that the guilty plea entered by Wade was involuntary.

The State appeals from the granting of the writ. Wade appeals from that portion of the writ requiring a new hearing, maintaining he should be unconditionally released, and not be required to again have the issue tried.

The District Court issued a certificate of probable cause, and stayed the execution of the judgment pending the determination of the appeal. Meanwhile, Wade has completed his time in prison, and has been released, presumably on parole.

Jurisdiction below rests on 28 U.S.C. A. § 2254; and here on 28 U.S.C. § 2253.

The petition was carefully considered by the District Judge. He outlined the procedures he followed in his order of July 8, 1969 [C.T., pp. 288, 289], and then found that certain facts were not in question, as quoted in the margin.[1]

The district court then set forth his understanding of the basis for petitioner's claim his plea was involuntary:

First, that it was induced by an extra-judicial confession made by petitioner following physical and mental coercion by sheriff's officers;

Second, that it was induced by the deceitful actions of the prosecuting attorney in failing to inform petitioner of the nature of the possible charges against him;

Third, that it was induced by a confession made by petitioner at a preliminary hearing at which petitioner was not represented by counsel and at which petitioner was not informed of his right to counsel;

Fourth, that petitioner never waived counsel.

The state defended against issuance of the writ upon three grounds:

A. That petitioner has failed to exhaust his state remedies as to the question of waiver of counsel;

B. That petitioner intentionally bypassed his available *state* remedies, rendering federal habeas corpus unavailable;

C. That the evidence adduced at the evidentiary hearing in the District Court fails to support petitioner's contentions.

The District Judge first ruled that petitioner had exhausted his state remedies, and had not by-passed relief available to him, and that the issue of waiver of counsel was properly before the District Court.

The alleged intentional by-pass by petitioner was based on his failure to file an opening brief on his direct appeal to the California Supreme Court. The state asserts this violates Chavez v. Dickson, 280 F.2d 727 (9th Cir. 1960). As the District Judge herein noted, that court does have the power to deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts. But this general rule is subject to limitations. "The court can find deliberate by-pass only when there was an

---

1. "In December, 1956, petitioner was interrogated concerning acts of assault and sodomy perpetrated upon an inmate of the Contra Costa County Jail by other inmates. He was subsequently charged with sodomy and a preliminary hearing was held before the Honorable Manuel Rose, Judge of the Justice Court of the Antioch Judicial District. At that hearing, held December 11, 1956, petitioner took the stand and admitted that he had taken part in the crime. He was at that time not represented by an attorney.

"On January 7, 1956, petitioner entered a plea of guilty to the charge of sodomy. On January 28, 1957, he was sentenced to the term prescribed by law."

intentional relinquishment of a known right or privilege, cf. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), coupled with a state refusal to entertain his federal claim on the merits because of the waiver. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L. Ed.2d 837 (1963)" [C.T. p. 291][2]

The District Court said:

"In this case neither the waiver nor the refusal of the state court to entertain the federal question on its merits has been shown. On the contrary the evidence before the court indicates that the failure to appeal was not a true waiver, but rather arose out of petitioner's lack of funds and of legal knowledge to prosecute and appeal on his own behalf. Further, the issues were presented to the California Supreme Court in a petition for writ of habeas corpus. It was denied without comment. Such a denial must be presumed to have been on the merits unless otherwise stated. Castro v. Klinger, 373 F.2d 847 (9th Cir. 1963)."

The district court then concluded petitioner "has failed to support his contention that his extra-judicial confession was induced by physical or mental coercion. He has also failed to support his contention that he was intentionally misled by the prosecution attorney." [C.T., p. 291].

■ The record before us clearly supports such conclusions by substantial evidence, and we agree with the District Court's conclusion on these issues, and affirm them. Jones v. United States, 423 F.2d 252, 254, Note 1 thereof (9th Cir. 1970); Hunt v. Nelson, 440 F.2d 58, 60 (9th Cir. 1971).

The District Court next found that petitioner was denied counsel at the preliminary hearing, and that he did not intelligently waive such counsel. Conceding that counsel need not always be furnished at such a hearing, the District Court held that counsel must be provided when the preliminary hearing is a critical stage in the criminal proceedings. It relied on Sessions v. Wilson, 372 F.2d 366 (9th Cir. 1967) in support of that position.

But *Sessions* was not an absolute holding. It states: "The pertinent question here, then, is whether in view of the events which transpired at Sessions' preliminary hearing * * * *the effectiveness of his legal assistance in subsequent proceedings was impaired.*" (Idem, p. 369). [Emphasis added].

This limitation of a general rule rests on the law, as expressed by this Court in Wilson v. Harris, 351 F.2d 840 (9th Cir. 1965), and quoted in Sessions at p. 369:

"(1) Under California law a preliminary examination is not in and of itself a critical stage in the judicial proceedings such as to constitutionally require the appointment of counsel at all such hearings; (2) a California preliminary hearing may be 'critical' however, under the circumstances of a particular case * * *; (3) such a hearing is critical if the events which transpire at that hearing are likely to prejudice the effectiveness of legal assistance in the subsequent proceedings. * * * *"

The pertinent question here, then, is whether, in view of the events which transpired at Wade's preliminary hearing, the effectiveness of his legal assistance in subsequent proceedings was impaired. *Sessions, ante,* p. 369, Wilson v. Harris, *ante,* p. 844.

The District Judge stated that after the defendants' confession to the charges at the preliminary hearing "there was little help that counsel could offer." We do not agree.

The order of the District Judge was filed on July 8, 1969. This was prior to the time the Supreme Court delivered the triumvirate cases of Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747, McMann, Warden v. Richardson, etc., 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763, and Parker v. North

---

2. Noia overrules Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761 (1950). Cf. Hedberg v. Pitchess, 362 F.2d 511 (9th Cir. 1966).

Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 all decided May 4, 1970.

McMann v. Richardson is particularly apt. There, there were three defendants: Dash[3], Richardson[4], and Williams.[5]

After the District Court in Dash, Richardson and Williams had denied hearings on the several petitions for *habeas corpus*, the Second Circuit reversed. The reason—said the Supreme Court— "was the Court of Appeals' view that a plea of guilty is an effective waiver of pretrial irregularities only if the plea is voluntary, and that *a plea is not voluntary if it is the consequence of an involuntary confession*." McMann v. Richardson, *ante*, at 765, 90 S.Ct. at 1445.[6] This view of the Second Circuit was based at least in part on two opinions of the Ninth Circuit: Smiley v. Wilson, 378 F.2d 144 (9th Cir. 1967) and Doran v. Wilson, 369 F.2d 505 (9th Cir. 1966) Cf. Note 10, McMann, p. 765, 90 S.Ct. 1441. Neither are here applicable, for in both *Doran* (p. 506) and *Smiley* (p. 148), the District Court had rejected the petitions on the pleadings, without a *hearing*.

The Supreme Court (*McMann, ante*), in reversing, found itself "unable to agree with the (Second Circuit) Court of Appeals on this question."

A guilty plea, said the Supreme Court, is not only an admission the defendant committed the acts charged, but also a waiver of trial, and hence must be "an intelligent act 'done with sufficient awareness of the relevant circumstances and likely consequences.' Brady v. United States, *ante* at 748, 90 S.Ct. 1463." Quoted from McMann v. Richardson, *ante*, at p. 766, 90 S.Ct. at p. 1446.

The Supreme Court then pointed out there were cases (a) where the defendant has his own reason for pleading guilty wholly aside from the strength of the case against him, and (b) where the defendant, had he thought the State could *not* prove its case would have gone to trial, but was motivated by evidence against him *independent of the confession*. "*In these cases, * * * the confession, even if coerced, is not a sufficient factor in the plea to justify relief.*" [Emphasis added]. And see Doran v. Wilson, ante, p. 507, key paragraph 2; and United States v. Smith, 139 U.S.

---

3. Dash's charges were very similar to those made here by Wade (Idem, p. 762) except that in Dash's case there had been no hearing on his charge of coercion by the trial judge. (Here, the alleged coercion by the Sheriff's officers and the alleged misleading by the prosecuting attorney were heard, and found by the District Court not to have existed.)

Dash also asserted that his attorney had advised him to plead guilty because Dash "did not stand a chance due to the alleged confessions signed by him". Idem, p. 762, 90 S.Ct. p. 1444.

4. Richardson charged a coerced confession and ineffectual counsel. Richardson had told his attorney he had been beaten to obtain the confession; that he didn't want to plead to something he did not do; that his attorney had conferred with him only 10 minutes prior to the day the plea of guilty was taken; that his attorney (a) advised him to plead guilty to avoid the electric chair; and (b) assured him he had an escape route by a later attack on the confession obtained by the beating.

5. Williams, after a guilty plea, charged his confession was coerced; that he did not understand the nature of the charge or the consequences of the plea.

6. "The law required this much, the Court of Appeals thought, at least in New York, where prior to Jackson v. Denno, 378 U.S. 368 [84 S.Ct. 1774, 12 L.Ed.2d 908] (1964) constitutionally acceptable procedures were unavailable to a defendant to test the voluntariness of his confession." *McMann*, p. 765, 90 S.Ct. p. 1440.

In *McMann* there was one additional issue. The additional issue was the inadequacy of counsel allegedly arising from the short period of consultation (a point raised here by Wade), and counsel's advice to the effect that the confession issue could be raised after a plea of guilty (erroneous then under New York law [see *McMann*, Note 11, p. 766, 90 S.Ct. 1441]; raisable then under California law [Penal Code, § 995]; but not charged by Wade).

App.D.C. 213, 432 F.2d 646, 647 (Cir. 1970).

We think the factors in this case clearly establish Wade's case falls in category (b) above, and bring the factual situation in Wade within the rule of McMann.

We first note that the defendant took the stand at his preliminary hearing and told of the tragic and horrible events in which he had participated in the early morning hours of December 7, 1956. On December 8, 1956, the defendant was interrogated by prison officials and denied the acts of sodomy and the assault on a fellow prisoner. On December 9, 1956, Wade's cell-mate and co-defendant McNabb was interrogated; admitted the acts charged and told the details of the cutting of the victim with a razor blade by both McNabb and Wade.[7]

The victim was then called in, stripped of clothing, and the injuries fully disclosed for the first time. The victim then, again for the first time, implicated Wade and McNabb.

The defendant Wade was then interrogated on December 9, 1956 and admitted his total involvement. Both Wade and McNabb were then given pen and paper and requested to write a full report. This they did in their own hand writing and signed the same (Resp. Exs. A and C at the District Court hearing).

The appellant Wade wrote his report as follows:

"On the nite of Dec. 7th after the fights we went back to our celles (sic) when we got to joking around when I went up in the upper bunk and through (sic) a towel around his nake (sic) alin (sic) fun when he went down for some reason I hit him in the face, he bleed (sic) all over the floor, so I told him to clean it up, after that someone told him to drop his pance (sic) when he did I took advantage of it; what ever the rest of the guys did I don't know because a cover was over the bunks, after he was sitting on the bowl and I kicked him from there or I either cut his back or burned his fingers from what was told to me I guess I did it all anyway I said to him if you fink I'll scuffle him when I get out I said I'd get him so I guess he thought he'd keep quite (sic); after I ask him if he wanted to fight me but he never so I guess I got mad again! I don't think I did anything to him after that. I must have went to sleep!

Joe Wade"

Co-defendant McNabb's statement admitted the assault but denied his participation in the sodomy, the cutting and the burning.

The third man of the four then confined in the cell, one Romano, was then interrogated, and he admitted the acts described by McNabb and Wade took place in the cell, but denied he had participated. He was asked to prepare and to sign a statement.

Photos were taken of the victim's burned hand, closed eye and mutilated back. (Resp. Ex. V).

On December 11, 1956, two days later, appellant and co-defendant McNabb were charged with sodomy at a preliminary hearing in the Justice Court of the Antioch Judicial District. Defendant was not represented by an attorney. He took the stand, and admitted the crime charged had taken place and his part in the crime was in striking the victim. Wade heard this testimony. Wade then was called, stated that he was testifying freely and voluntarily and without promises having been made.

"Q. You are willing to waive your rights to an attorney for this hearing in order to testify?

"A. Yes." (Page 11, ll. 12 & 13, Ex C, Tr. of December 11, 1965 Preliminary Examination.)

Just as in McMann v. Richardson, *supra*, we have an uncounseled defendant at the preliminary hearing, but one rep-

7. The cut was allegedly in double lines on the victim's back, 12″ x 14″ square, and the word "PUNK" was carved, in double lines, at the bottom of the square.

resented by an experienced attorney at the arraignment. We know that under California law at the time (not at appellant's preliminary hearing, but at his arraignment), a motion could have been made by his counsel under California Penal Code, § 995, and People v. Mora, 120 Cal.App.2d 896, 262 P.2d 594 (1953) to bar Wade's statements made at the preliminary hearing.[8]

At the time of appellant's arraignment, on January 7, 1956, the *Mora* case had been the law of the State of California over two years.

As *McMann, supra,* in note 12, points out, Commonwealth of Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 110 L.Ed. 126 (1956) "did not hold that a plea of guilty, offered by a defendant *assisted by competent counsel* is invalid whenever induced by the prosecution's possession of a coerced confession." (and here, *a priori,* where the District Court found Wade's arraignment confession was *not* coerced).

The "train of events" in this case convinces us, as the train of events in *McMann* convinced the Supreme Court, that: "Nothing in this train of events suggests that the defendant's plea, as distinguished from his confession, is an involuntary act." (*McMann, ante,* p. 769, 90 S.Ct. p. 1448). His later petition for collateral relief asserting that a *coerced* confession induced his plea has been found not true by the District Court. Relief must rest on his claim then, that, though not coerced, the admissibility of his confession was mistakenly assessed, and he was erroneously advised by his counsel at the time he entered his plea. "The Constitution, however, does not render pleas of guilty 'so vulnerable'." (*McMann, ante,* p. 769, 90 S.Ct. p. 1448); Womack v. Craven, 431 F.2d 1191, 92 (9th Cir. 1970).

Defendant knew there was in the prosecution's hands his co-defendant's testimony, the eyewitness testimony of the third convict, Romano, the testimony of the complaining witness himself, the existence of the damning photographs of the complaining witness, of his own signed statement in his own handwriting given to the jailers. He knew of the willingness of the prosecuting attorney to drop other possible charges. (There had been discussion of assault by means of force likely to produce great bodily injuries, and even discussion of a charge of mayhem). Wade knew he had discussed his case with a physician (Dr. Hicks—Resp. Ex. N) and, after his plea, he had discussed the facts with a Deputy Adult Probation Officer (Mr. Leslie —Resp. Ex. U). To neither did he deny his guilt. In fact, he is quoted by the Probation Officer as stating: "I did just what I am charged with. I kicked him and cut his back and burned his hand. In the sex play, Red asked me to go first." The voluntariness of his statements were never discussed, much less denied, in his talks with his attorney. [R.T. 129.] He discussed his plea with his attorney, and "We determined that a plea of guilty would be best." [R.T., p. 133.]

"That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing." *McMann, supra,* p. 770, 90 S.Ct. p. 1448.

---

8. The district court judge specifically found that the original written confession made by the petitioner while he was in jail, immediately following the incident and prior to the preliminary hearing, was not "induced by physical or mental coercion." (C.T. p. 291). This confession would have been admissible in evidence against the petitioner had a trial been held in 1957. This confession could not have been suppressed under California Penal Code sec. 995—which only applies to defects in the indictment—, nor under the intervening Supreme Court decisions in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)—which apply to such custodial interrogations but which are not retroactive in scope. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed. 2d 882 (1966).

Each of the matters listed above as those which might loom large in the mind of appellant Wade were likewise undoubtedly in the mind of his counsel. United States v. Smith, dissenting opinion, 440 F.2d 521, 530 (7th Cir. 1971); Jackson v. Cox, 435 F.2d 1089, 1092 (4th Cir. 1970). For Wade to obtain relief, he must "demonstrate gross error on the part of counsel when he recommended that the defendant plead guilty instead of going to trial and challenging the * * * procedures for determining the issue of confessions." This gross error has not been established.

For the philosophy underlying the opinion in McMann v. Richardson, we quote in the margin from Justice Black's Opinion.[9]

With Brady v. United States and McMann v. Richardson, ante, in mind (an advantage not given to the District Court Judge), we turn to the basis for the District Court's holding that Wade's plea was induced by his erroneous belief that he was being allowed to plead guilty to the lesser of two charges against him, when, in fact, he was being charged with the greater of the two [R. T. 293]

While there is some difficulty in ascertaining exactly what took place in respect to this matter at the arraignment, it seems clear that any misunderstanding was only in Wade's mind, and not in the mind of any other actor.[10]

Nowhere does appellant Wade charge that the Prosecuting Attorney, or the

9. "What is at stake in this phase of the case is not the integrity of the state convictions obtained on guilty pleas, but whether, years later, defendants must be permitted to withdraw their pleas, which were perfectly valid when made, and be given another choice between admitting their guilt and putting the State to its proof. It might be suggested that if *Jackson* had been the law when the pleas in the cases below were made—if the judge had been required to rule on the voluntariness of challenged confessions at a trial—there would have been a better chance of keeping the confessions from the jury and there would have been no guilty pleas. But because of inherent uncertainty in guilty-plea advice, this is a highly speculative matter in any particular case and not an issue promising a meaningful and productive evidentiary hearing long after entry of the guilty plea. The alternative would be a *per se* constitutional rule invalidating all New York guilty pleas that were motivated by confessions and that were entered prior to *Jackson.* This would be an improvident invasion of the State's interests in maintaining the finality of guilty-plea convictions that were valid under constitutional standards applicable at the time. It is no denigration of the right to trial to hold that when the defendant waives his state court remedies and admits his guilt, he *does so* under the law then existing; further, he assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts. Although he might have pleaded differently had later decided cases then been

the law, he is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." [*Idem.* pp. 773–74, 90 S.Ct. p. 1450].

10. At the arraignment, defendant knew that he was working a deal with the prosecutor to avoid three charges against him. [R.T., p. 95, ll. 10–12; p. 96, ll. 19–21].

Defendant, talking to his co-defendant McNabb at that arraignment knew "sodomy carries one to life" [R.T. p. 94], and testified:

"I guarantee if I made that deal *now* I would never plead to the big one. I would try to get one of the little ones" [R.T. p. 25] [Emphasis added].

Pursuant to his "deal", Wade knew he was to plead guilty [R.T. p. 95, l. 21] and to testify [R.T. p. 95, l. 23 to p. 96, l. 1] and agreed to waive an attorney [R.T. p. 96, l. 6 to 12; quoting Prel. Hearing Tr., p. 11, l. 10, et seq.].

Wade stated he never discussed with his attorney the penalty for sodomy. Wade stated his attorney said "You are fortunate they didn't press the other charges."

"I said, 'Yes, I know. I can get a five year out.' When I said that, the look he gave me * * * was a look, you know."

Petitioner's original counsel stated:

"After reading the transcript of the preliminary hearing and discussing it with defendant (In January, 1956), *we* determined that a plea of guilty would be best." [Emphasis added].

judge, or his own attorney, made any misrepresentation to him, at the time of the preliminary hearing. We take it our problem is to determine, in view of *Sessions, ante,* only whether petitioner enjoyed "effective" assistance of counsel. Petitioner cannot avoid the standards set down in *McMann* if his counsel simply misjudged the admissibility, or the probable effect of Wade's preliminary hearing testimony if admitted, in view of all the other known and existing evidence as to Wade's guilt. Wade has made no showing of reliance on advice that was outside of the advice of competent counsel (*McMann, ante,* pp. 770–771, 90 S.Ct. 1441), or contrary to law. United States ex rel Scott v. Mancusi, 429 F.2d 104, 109 (2nd Cir. 1970). There is no showing that his defense was incompetent. In fact, the contrary was established [R.T. 129, et seq.] and a reading of his counsel's testimony shows his experience and competence.[11]

Attempts by both counsel for Wade and counsel for the State to question counsel for Wade at the preliminary hearing to ascertain what said counsel's recollection was as to conversations between Wade and his then attorney were hampered, if not foreclosed (at the hearing in the District Court), by Petitioner Wade's insistence on his privilege between lawyer and client, and his refusal to waive it [R.T. 118], even though petitioner had testified as to portions of that conversation [R.T. 118, ll. 21–25]. Even Wade's zealous attorney on this appeal was inclined to permit the former attorney to speak [R.T. 119, ll. 20–22, p. 125], but Mr. Wade refused to waive the privilege [R.T. 19–122]. It was his right to claim the privilege, but it made a determination of the facts more difficult.

We conclude that under the teaching of McMann v. Richardson *ante,* and companion cases decided after the writ was ordered below, the petition for a writ of habeas corpus should not have been

granted, and we reverse the order of the District Court granting relief.

In view of our determination on the merits of case [No. 25073], we need not pass on the question whether petitioner, had we affirmed the District Court, could or could not have been tried a second time after the issuance of the writ [No. 25061].

The order of the District Court for the writ to issue in No. 25073 is vacated, and the writ denied. The appeal in No. 25061 is dismissed as moot.

---

11. During the evidentiary hearing below, the petitioner's present counsel stated that the petitioner was not complaining about defense counsel's competency. [R.T. 119].