UNITED STATES of America,
Plaintiff-Appellee,

v.

Scott Brian JANOE,
Defendant-Appellant.

No. 82–1307.

United States Court of Appeals,
Tenth Circuit.

Nov. 4, 1983.

Certiorari Denied Feb. 21, 1984.
See 104 S.Ct. 1310.

C. Thomas Bastien, Denver, Colo., for defendant-appellant.

Robert S. Streepy, Asst. U.S. Atty., Topeka, Kan. (Jim J. Marquez, U.S. Atty. and Vernon E. Lewis, Asst. U.S. Atty., Topeka, Kan., were on brief), for plaintiff-appellee.

Before SETH, Chief Judge, and HOLLOWAY, Circuit Judge, and ARRAJ, District Judge *.

HOLLOWAY, Circuit Judge.

Defendant Scott Brian Janoe was convicted, after a jury trial, of bank robbery and aiding and abetting the robbery, in violation of 18 U.S.C. §§ 2113(a) and 2.[1] Defendant appeals, claiming error on grounds that (1) the trial court improperly amended the indictment under which defendant was charged; (2) defendant did not knowingly and voluntarily waive his right to testify; (3) defendant did not receive effective assistance of counsel; and (4) the trial court erred in refusing to hold a hearing under 18 U.S.C. § 3501 on the voluntariness of defendant's confession. We disagree with the first three of defendant's contentions but conclude that a hearing is required under § 3501, and remand for that reason.

## I

The grand jury charged that on September 4, 1981, defendant and his brother[2] took $809.50 from the Mutual Savings Association in Leavenworth, Kansas (the Association), in violation of 18 U.S.C. §§ 2113(a) and 2. I R. 2. The trial court granted defendant's motion for a mental examination pursuant to 18 U.S.C. §§ 4244 and 3006A(e). Supp. I R. 1–4. The Final Psychiatric Evaluation concluded, among other things, that defendant was competent to commit the offense at the time of the robbery, and was competent to stand trial. *Id.* at 8. As a result of this evaluation, defendant's pretrial attorney did not pursue an insanity defense. IV R. 2–3.

At a pretrial hearing on February 10, 1982, defendant's pretrial attorney stated that due to another commitment, he would be unable to try the case as scheduled on February 16. Supp. V R. 2. Defendant agreed to have an associate of his pretrial attorney, who previously had met with defendant and "reviewed the file," try the case. *Id.* at 2–3.

On the morning of the trial on February 16, the court considered two oral motions. First, the trial court granted the Government's motion to amend the indictment to reflect the appropriate federal agency that insured the association at the time of the robbery; the words "Federal Deposit Insurance Corporation" were replaced with "Federal Savings and Loan Insurance Corporation." Defendant made no objection to the amendment. I R. 44; II R. 6. Second, the trial court denied, without an evidentiary hearing, defendant's motion to suppress his

---

* The Honorable Alfred A. Arraj, of the District of Colorado, sitting by designation.

1. The trial judge sentenced defendant to twelve years' imprisonment with parole eligibility to be determined under 18 U.S.C. § 4205(b)(2). I R. 37.

2. Defendant's brother pled guilty on October 19, 1981. After a period of observation and study, defendant's brother was sentenced to ten years' imprisonment with parole eligibility to be determined under 18 U.S.C. § 4205(b)(2). I R. 46, 48.

confession on the ground that it was not voluntarily made. I R. 47; II R. 3–6.

At trial, the evidence, when viewed favorably to the Government as it must be on this appeal, showed the following facts. A young man entered the association at 4:15 p.m. on September 4, 1981. He handed a teller a note which read "I have a gun. Put all of the money in this envelope." The teller put $809.50 in an envelope that the young man handed her, and he left. II R. 7–9, 40. The teller then informed her fellow employees of the robbery and went out of the building and into the parking lot. She thought she saw the young man who had just robbed the association in a pickup truck in the lot with other occupants. She communicated this information to the police. *Id.* at 9–10.

At 4:22 p.m., the police stopped a pickup truck matching the description given by the teller. Defendant was one of the two occupants in the truck. The police recovered $809.50 from a manilla envelope found in the truck, including five $20 bait bills. *Id.* at 46–55.

At 6:35 p.m., Agents Yates and Moore of the Federal Bureau of Investigation interrogated defendant. They obtained a written waiver of defendant's *Miranda* rights. *Id.* at 60–62; Supp. II R. Exhibit 4. Defendant admitted that he robbed the associ-

ation and explained the mechanics of the robbery and his brother's participation.[3] II R. 64–65. With defendant's consent, the police and the two FBI agents searched the hotel room of defendant and his brother. They found, among other things, fourteen manilla envelopes in a fifteen-envelope package.

Other evidence produced by the Government indicated that the association was insured by the Federal Savings and Loan Insurance Corporation on the date of the incident, *id.* at 39, Supp. II R. Exhibit 7, and that the two FBI agents detected an odor of alcohol on defendant's breath at the time of his interrogation. II R. 63, 79.

At the close of the Government's case, the trial court denied defendant's motion for acquittal. Defendant then rested without offering any evidence, *id.* at 82–83, and was found guilty by the jury.

## II

### The indictment

The indictment[4] under which defendant was charged[5] incorrectly identified the Government agency that insured the deposits of the association; the indictment should have named the Federal Savings and Loan Insurance Corporation (FSLIC)[6] rather

---

3. Defendant moved to suppress the confession at the commencement of trial and also objected to the admission of the confession when offered. II R. 61–62, 79.

4. The indictment charged that defendant and his brother:

by force and by intimidation, did take from the person and presence of Linda Hill [, the teller,] about $809.50 in money belonging to and in the care, custody, control, management and possession of the Mutual Savings Association, the deposits of which were then insured by the Federal Deposit Insurance Corporation, contrary to and in violation of 18 U.S.C. § 2113(a) and § 2.

I. R. 2.

5. Defendant was charged with violating 18 U.S.C. § 2113(a), which provides, in pertinent part, that:

Whoever, by force and violence, or by intimidation, takes ... from the person or presence of another any property or money ... belonging to, or in the care, custody,

control, management, or possession of, any bank ... or any savings and loan association; or

Whoever enters or attempts to enter any bank ... or any savings and loan association ... with intent to commit in such bank ... or in such savings and loan association, ... any felony affecting such bank, ... or such savings and loan association and in violation of any statute of the United States, or any larceny—

Shall be fined not more than $5,000 or imprisoned not more than 20 years, or both.

6. Section 2113(g) provides that:

As used in this section the term "savings and loan association" means any Federal savings and loan association and any "insured institution" as defined in section 401 of the National Housing Act, as amended, and any "Federal credit union" as defined in section 2 of the Federal Credit Union Act.

*Id.* § 2113(g). See also the provisions of 12 U.S.C. §§ 1724(a), 1725(a), and 1726(a).

than the Federal Deposit Insurance Corporation (FDIC). *See* 18 U.S.C. § 2113(b) (referring to FDIC insurance of deposits of a "bank"). In granting the Government's pretrial motion to amend the indictment, the trial court noted that the amendment was designed to reflect the "correct designation of the government insurance ... [c]orporation involved," and had "nothing to do with the substance of the indictment." II R. 6. Defendant argues that the amendment was improper because the identity of the federal insuring agency was an essential element of the offense under 18 U.S.C. § 2113 that must be included in the original indictment.

We believe that this challenge to the amendment of the indictment implicitly calls into question the sufficiency of the indictment as returned by the grand jury. For reasons that follow we hold that the indictment is legally sufficient and that the amendment was proper.

### a. *Sufficiency of the indictment as returned*

■ An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *See, e.g., United States v. Bailey,* 444 U.S. 394, 414, 100 S.Ct. 624, 636, 62 L.Ed.2d 575 (1980); *United States v. Radetsky,* 535 F.2d 556, 562 (10th Cir.1976); 1 C. Wright, *Federal Practice and Procedure* § 125, at 363–64 (2d ed. 1982). The original indictment here meets these requirements.

■ The indictment specifically informed defendant of the nature of the alleged offense and the statutory violations involved. Defendant was put on notice that a federal agency insured the deposits in the association. The indictment's erroneous reference to the FDIC did not subject defendant to the possibility of double jeopardy.

Two other circuits have held that an erroneous reference to the FDIC in an indictment is not fatal. In *United States v. Radowitz,* 507 F.2d 109, 112 (3d Cir.1974), the Third Circuit held that a mistaken reference to the FDIC, rather than the FSLIC, is a "harmless" defect. In *United States v. Hoke,* 610 F.2d 678 (9th Cir.1980), the indictment stated that a savings and loan association was insured by the FDIC. The Government proved at trial that the FSLIC insured the association. The Ninth Circuit held that the variance in proof is "without prejudice as an obvious inadvertence that did not affect substantial rights of the defendant. It is to be disregarded." *Id.* at 679.

Moreover, courts in analogous cases have sustained indictments under § 2113 despite alleged defects in the description of the federal insuring agency involved.[7] Only the failure to mention *any* federal insuring agency constitutes a fatal defect in an indictment. *E.g., Hewitt, supra,* 110 F.2d at 5 (emphasis added) ("The *complete* omission of any allegation [in the indictment] which *might reasonably be construed to mean* that the bank was [federally] insured would be fatal ...."); *United States v. Cox,* 285 F.Supp. 367, 369 (E.D.Wis.1968) (indictment insufficient because "absolutely no factual federal connection was alleged"). We therefore conclude that the original indict-

---

7. *See, e.g., United States v. Coleman,* 656 F.2d 509, 512 (9th Cir.1981) ("Although it would have been preferable to have set forth the fact that the association was insured by the FSLIC, the reference [in the indictment] to the statute was adequate to inform the defendant of that element of the offense, if in fact there was any doubt.... [T]he indictment, by reference to the statute, adequately described a federally insured savings and loan association."); *Kienlen v. United States,* 379 F.2d 20, 22–23 (10th Cir.1967) (indictment alleging that bank was "a member of and insured by" FDIC is sufficient;

no need to allege that deposits were insured by FDIC); *Wheeler v. United States,* 317 F.2d 615, 617 (8th Cir.1963) (indictment sufficient if it alleged that bank was insured by FDIC; no need to add "of the United States"); *Hewitt v. United States,* 110 F.2d 1 (8th Cir.1940) (indictment containing the initials "FDIC" is sufficient; no need to spell out "Federal Deposit Insurance Corporation"); *Head v. United States,* 364 F.Supp. 29, 30 n. 1 (W.D.Wash. 1973) (indictment charging defendant with robbing "a bank within the meaning of [18 U.S.C. § 2113(f) ]" is sufficient).

ment is sufficient, despite the mistaken reference to the FDIC rather than the FSLIC.

### b. *Propriety of the amendment of the indictment*

■ Our analysis of defendant's challenge to the amendment of the indictment is guided by our discussion of the sufficiency of the indictment. Because we hold that the original indictment is sufficient, despite the reference to the incorrect federal insuring agency, we find that the trial court's amendment to insert the correct agency name was proper.

The Supreme Court has held that "an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form." *Russell v. United States*, 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240 (1962). *See also United States v. Hall*, 536 F.2d 313, 319 (10th Cir.), *cert. denied*, 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 285 (1976). Matters of form include amendments "to correct a misnomer." 1 C. Wright, *supra*, § 127, at 420.[8] *See, e.g., United States v. McGrath*, 558 F.2d 1102, 1105 (2d Cir.1977) (amendment corrected name of state commission which employed defendant); *Dye v. Sacks*, 279 F.2d 834, 837 (6th Cir.1960) (amendment corrected misdescription of victim's name); *United States v. Denny*, 165 F.2d 668, 668–70 (7th Cir.1947), *cert. denied*, 333 U.S. 844, 68 S.Ct. 662, 92 L.Ed. 1127 (1948) (amendment corrected misspelling of defendant's name).

In changing the designation of the federal insuring agency from the FDIC to the FSLIC, the amendment here relates to the form of the indictment. Defendant was not prejudiced by the change. In fact, defendant did not object to the amendment. The naming of a federal insuring agency in the indictment gave defendant notice of the requisite federal involvement under § 2113. To prohibit the subsequent correction of the misidentification of the federal insuring agency would "make a fetish of the prohibition against amendment of an indictment." *United States v. Skelley*, 501 F.2d 447, 453 (7th Cir.), *cert. denied*, 419 U.S. 1051, 95 S.Ct. 629, 42 L.Ed.2d 647 (1974).

In *Del Piano v. United States*, 240 F.Supp. 687 (E.D.Pa.1965), *rev'd on other grounds*, 362 F.2d 931 (3d Cir.1966), the district court was faced with precisely this issue; "the words 'Federal Savings and Loan Insurance Corporation' were substituted [in an amendment to an indictment] for the words 'Federal Deposit Insurance Corporation.'" 240 F.Supp. at 689. The district court held that the amendment "related to the form of the indictment and did not change the nature of the offense [under § 2113]. It was clearly permissible since it did not affect a matter of substance." *Id.*

Defendant contends that *Del Piano* is not persuasive authority for two reasons. First, he says that "[i]n *Del Piano*, the change was made at sentencing after a plea of guilty. In this case the change was made immediately prior to commencement of the trial on the issue of guilt." Reply Brief of Defendant-Appellant at 1 (citation omitted). We fail to see, nor does defendant explain, the relevance of this factual distinction. Second, defendant "note[s] that *Del Piano* was reversed; whether on

---

8. Courts also have permitted amendments to correct typographical errors. *See, e.g., United States v. Cina*, 699 F.2d 853, 856–60 (7th Cir. 1983) (change in date of offense); *United States v. Bush*, 659 F.2d 163 (D.C.Cir.1981) (change in number of form that defendant was charged with altering); *United States v. Nicosia*, 638 F.2d 970, 976 (7th Cir.1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981) (change of witness's testimony); *Jervis v. Hall*, 622 F.2d 19, 22–23 (1st Cir.1980) (change in date of offense); *United States v. Powell*, 564 F.2d 256, 259 (8th Cir. 1977), *cert. denied*, 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 495 (1978) (change in date of of-

fense); *United States v. Akers*, 542 F.2d 770, 772 (9th Cir.1976) (per curiam) (change in date of offense); *United States v. Neff*, 525 F.2d 361, 363 (8th Cir.1975) (change in weapon serial number); *United States v. Skelley*, 501 F.2d 447, 451–54 (7th Cir.), *cert. denied*, 419 U.S. 1051, 95 S.Ct. 629, 42 L.Ed.2d 647 (1974) (change in serial numbers of counterfeit bills); *United States v. Fruchtman*, 421 F.2d 1019, 1021 (6th Cir.1970) (change in citation of statute); *United States v. Gammill*, 421 F.2d 185 (10th Cir.1970) (change in date of offense). *See also United States v. Pazsint*, 703 F.2d 420, 423 (9th Cir.1983) ("Simply correcting an obvious clerical error ... may be harmless error").

'other grounds' or not, it was still reversed." *Id.* at 1–2. The Third Circuit's reversal on other grounds does not undercut the district court's reasonable application of the *Russell* rule permitting amendments to indictments on matters of form.

We therefore conclude that there was no error in the amendment of the indictment.

## III

### *Waiver by defendant of the right to testify*

Defendant argues that we only may affirm his conviction if we "find beyond a reasonable doubt that no prejudice was suffered by Defendant resulting from his failure to testify ... [and that] the record [is] clear that defendant knowingly and voluntarily 'after full consultation with his counsel,' gave up the right to testify." Defendant contends that "[l]ooking at the *prima facie* case made by the Government, defendant obviously had nothing to lose by testifying in his own defense." Brief of Defendant-Appellant at 15–16.

The relevant statute provides that a defendant "shall, *at his own request,* be a competent witness." 18 U.S.C. § 3481 (emphasis added). Defendant does not argue that the trial court or his attorney deprived him of his right to testify. The record clearly shows that such was not the case.[9] Moreover, defendant does not claim that he did not make the decision not to testify,[10] or that he and his attorney disagreed on whether defendant should take the stand. *Cf. United States v. Von Roeder,* 435 F.2d 1004, 1008–10 (10th Cir.1970) (trial court held hearing when defendant wanted to take the stand and his attorney advised against it). We are convinced that there was no error here in this regard and that there is no constitutional or statutory mandate that a trial court inquire further into a defendant's decision not to testify in circumstances of this sort.

## IV

### *Effective assistance of counsel*

Defendant vigorously argues that he was denied his Sixth Amendment right to effective assistance of counsel on numerous grounds. We must measure these contentions under our standard that "[t]he Sixth Amendment demands that defense counsel exercise the skill, judgment and diligence of a reasonably competent defense attorney." *Dyer v. Crisp,* 613 F.2d 275, 278 (10th Cir.) (en banc), *cert. denied,* 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980). Considering all the claims of default by his counsel, we must reject defendant's arguments and hold that his right to effective representation was not infringed. We will now consider the specific claims made by defendant.

### a. *Substitution of new defense counsel six days before trial*

As noted, six days before trial there was a short hearing before the trial judge with defendant, his attorney Robert Harris, Har-

---

**9.** At the conclusion of the Government's case, defense counsel announced in open court that the defense would rest and not present any evidence. II R. 83. Then in proceedings out of the presence of the jury, which was excused for the night, defense counsel said that he had met with defendant the past Friday (the first trial date being the following Tuesday, February 16, 1982), and that at that time defendant advised the attorney he would not be taking the stand and presenting evidence on his behalf; but that just five minutes ago, and "again just now, that he wishes to have his brother come in and testify." Defendant confirmed the correctness of his attorney's statement at that point in court. *Id.* at 85.

We will discuss the request for the brother's testimony in Part IV(b), *infra.* At this point we note merely that defendant made no objection to his attorney's statements that defendant would not testify and made no request to testify.

**10.** Courts have cited, with apparent approval, the statement in *American Bar Association Standards Relating to The Administration of Criminal Justice: Prosecution and Defense Function* § 4–5.2 (2d ed. 1979) (emphasis added) that "[t]he decisions which are to be made by the accused after full consultation with counsel are: (i) what pleas to enter; (ii) whether to waive jury trial; and (iii) *whether to testify in his or her own behalf." See, e.g., United States v. Barnes,* 610 F.2d 888, 893 n. 25 (D.C.Cir.1979); *United States v. Calabro,* 467 F.2d 973, 985 (2d Cir.1972).

ris' associate Bill Hutton, and the Assistant United States Attorney all in attendance. Defense counsel Harris announced that he had a conflict on the trial date. Mr. Harris disclosed that he had discussed the conflict with defendant. During his conversation with defendant, Mr. Harris explained that because he would be unavailable on the trial date, he either could seek a continuance for at least another week or he could ask Mr. Hutton of his office, who was "somewhat familiar with the case, to proceed on his behalf." According to Mr. Harris, defendant stated that he would prefer to go ahead with the case. V Supp. R. 2–3.

The trial judge then questioned defendant directly. Defendant said that he understood what his attorney had just told the court and stated that it was his desire to go forward with the other attorney representing him. After the clerk confirmed that the case could start the following Tuesday, the trial judge asked defendant if it was his desire "for Mr. Harris to resign as active attorney in this case and for his partner to take over." Defendant replied "[t]hat's correct, sir." The new counsel, Mr. Hutton, said that he understood the circumstances and was ready to go forward; that he had met with defendant the preceding day and would meet with him again the next week; and that they had "discussed it and I have reviewed the file." The court approved the resignation of Mr. Harris and the appointment of his associate, Mr. Hutton, to represent the defendant. *Id.* at 3–4.

■ Defendant first argues that there should be a *per se* rule that an attorney appointed six days before trial of a felony case is incapable of rendering effective assistance of counsel. The contention fails first because the record shows that the new attorney appointed here followed his associate who had been working on the case since at least September 28, 1981, before this substitution of counsel on February 10, 1982. Mr. Harris in September 1981 filed a motion for a mental examination, which was granted. I R. 18. Further, the new counsel was an associate of Mr. Harris and had some familiarity with the case. More-

over, defendant consented to the substitution in open court. Thus we are not persuaded, particularly on such facts, to hold that there was a *per se* denial of effective representation. We instead follow our established rule that various factors govern the determination whether a given preparation time is sufficient to permit an attorney to effectively represent his client. *See United States v. Golub,* 694 F.2d 207, 215 (10th Cir.1982); *United States v. Cronic,* 675 F.2d 1126, 1128–29 (10th Cir.), *cert. granted,* —— U.S. ——, 103 S.Ct. 1182, 75 L.Ed.2d 430 (1982); *United States v. King,* 664 F.2d 1171, 1173 (10th Cir.1981); *see also United States v. Stead,* Nos. 80–1450 and 80–2010, slip op. at 4 (10th Cir. 1/14/82) ("Appointment of defense counsel eleven days before trial by itself does not require finding [that defendant was denied effective assistance of counsel."]; *cf. Ungar v. Sarafite,* 376 U.S. 575, 590, 84 S.Ct. 841, 850, 11 L.Ed.2d 921 (1964).

Defendant also argues that in these circumstances, there was no way an attorney could prepare a defense in six days, pointing specifically to counsel's duty to investigate. Again, the argument ignores the previous preparations by Mr. Harris and the opportunity for investigation for several months by the associate of the attorney who tried the case. Furthermore, the bank robbery charge and the trial itself (one day of presentation of evidence, seven witnesses and seven exhibits) are not indicative of a complex case.

In sum, we hold that the time allowed for trial preparation did not deprive defendant of effective assistance of counsel.

### b. Defense counsel's failure to call defendant's brother to testify

Defendant further argues that inadequacy of counsel is shown by counsel's failure to call defendant's brother to testify.

■ Whether to call a particular witness is a tactical decision and thus a matter of discretion for trial counsel. *United States v. Miller,* 643 F.2d 713, 714 (10th Cir.1981). Given the strong evidence against defendant and the brother's com-

plicity in the offense, the decision not to call the brother to testify does not establish lack of effective representation by defendant's trial attorney.

### c. Failure to pursue the insanity defense

Defendant claims that ineffectiveness of counsel is also shown by his attorney's failure to develop an insanity defense. Defendant relies on a statement attributed to him in the Final Psychiatric Evaluation by Dr. James R. Leach, D.O., Chief of Forensic Psychiatry at the United States Medical Center for Federal Prisons, that defendant "does not remember a bank robbery." I Supp. R. 8.

■ We are not convinced by defendant's argument. We note that in the same evaluation quoted above, Dr. Leach stated that "the defendant was not suffering from a mental disease or defect that would substantially impair his ability to appreciate the wrongfulness of his alleged behavior or prevent him from conforming ... his actions to the requirements of the law." Id. [11] In *United States v. Allen,* 554 F.2d 398, 401–05 (10th Cir.), *cert. denied,* 434 U.S. 836, 98 S.Ct. 124, 54 L.Ed.2d 97 (1977), we were faced with far more evidence of insanity than is present here. Yet we concluded that trial counsel's determination not to prepare and assert the insanity defense did not constitute ineffective assistance of counsel. Again, a matter of judgment was involved in the circumstances here. We therefore conclude that the failure to pursue the insanity defense in this case cannot support defendant's ineffective assistance of counsel claim.

In sum, none of these grounds persuades us that defendant was denied effective assistance of counsel. Other grounds are urged. Two of them are related to issues we have considered and found lacking in merit—amendment of the indictment and defendant's decision not to testify. *See*

Parts II and III, *supra.* The only remaining claim is that defendant's counsel was derelict in not filing a written motion to suppress defendant's confession. In Part V, *infra,* we point out that such a motion was not an essential predicate for obtaining a hearing on the suppression of the confession in these circumstances, and we make a disposition in favor of defendant on the confession issue. Thus, we find no merit in the claim of denial of effective assistance of counsel.

### V

### Denial of a hearing on the voluntariness of defendant's confession

On the morning of trial, defendant orally moved to suppress the statement that he made to the FBI agents two hours after the robbery in which he confessed to the crime. Defendant argued that he "was intoxicated ... at the time that [the] statement was taken," that he was not advised of his rights, and that he was told he would have to stay there all night if he did not give a statement. II R. 4.[12] The trial court denied the motion without hearing any evidence and stated that "[y]our argument is noted and overruled." *Id.* at 6.

During the trial, defendant objected to Agent Yates' testimony concerning the confession on the grounds that his intoxication rendered the confession involuntary. *Id.* at 61–62. The trial court rejected defendant's position and stated that "[y]our objection is noted by the court and overruled." *Id.* at 62. Defendant again objected when the Government offered in evidence the signed waiver of his *Miranda* rights. *Id.* at 79. The trial court stated that "[y]our [objection is] noted, and the exhibit is admitted." *Id.*

■ Defendant argues that the trial court erred in failing to hold a hearing on the voluntariness of the confession as man-

---

11. This conclusion would tend to disprove a lack of competence to commit the offenses. *See, e.g., United States v. Allen,* 554 F.2d 398, 402 n. 7 (10th Cir.), *cert. denied,* 434 U.S. 836, 98 S.Ct. 124, 54 L.Ed.2d 97 (1977).

12. On appeal, defendant states that his contention is that he was too intoxicated to voluntarily waive his right to remain silent. Brief of Defendant-Appellant at 14.

dated by 18 U.S.C. § 3501(a). We must agree and remand for a hearing on the voluntariness of the confession.

Section 3501(a) provides that:

In any criminal prosecution brought by the United States ... a confession ... shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge *shall,* out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

18 U.S.C. § 3501(a) (emphasis added).[13] This section codifies the constitutional requirement for a hearing on the voluntariness of a defendant's confession announced by the Supreme Court in *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 2 L.Ed.2d 908 (1964).

The Government contends that the failure to hold a § 3501 hearing in the instant case constitutes harmless error.[14] We disagree for three reasons.

First, § 3501(a) affirmatively requires that the "trial judge *shall* ... determine any issue as to [the] voluntariness"[15] of a confession; it does not leave the question whether to hold a hearing to the trial judge's discretion. We agree with the Ninth Circuit, which said in the similar context of failure to instruct the jury on the voluntariness of defendant's statements, that "neglecting a statutory requirement should diminish our enthusiasm to invoke the harmless error doctrine." *United States v. Miller,* 603 F.2d 109, 110 (9th Cir.1979).

Second, the Supreme Court repeatedly has held that *"any* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law 'even though there is ample evidence aside from the confession to support the conviction.'" *Mincey v. Arizona,* 437 U.S. 385, 398, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290 (1978) (emphasis in original) (quoting *Jackson v. Denno, supra,* 378 U.S. at 368, 84 S.Ct. 1774). *See also New Jersey v. Portash,* 440 U.S. 450, 459, 99 S.Ct. 1292, 1297, 59 L.Ed.2d 501 (1979); *Haynes v. Washington,* 373 U.S. 503, 518–19, 83 S.Ct. 1336, 1345–46, 10 L.Ed.2d 513 (1963); *Payne v. Arkansas,* 356 U.S. 560, 567–68, 78 S.Ct. 844, 849–50, 2 L.Ed.2d 975 (1957); *Hamilton v. Craven,* 350 F.Supp. 1251, 1257 n. 4 (N.D.Cal.1971) ("Introduction of an involuntary confession requires

---

**13.** Section 3501(e) defines a confession as "any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing." 18 U.S.C. § 3501(e). Defendant's statement to the FBI agents is a confession under § 3501(e). Direct examination of Agent Yates produced the following testimony regarding defendant's confession:

Q. Now, upon being advised of his rights, what, if anything, did [defendant] tell you regarding the robbery ....

A. He said that as he passed by the [association], he decided to rob the facility as he was in need of money.

Q. Okay. Did he tell you he enlisted the aid of another individual?

A. Yes, sir, he did.

Q. Once he enlisted that individual's aid, did he tell you how he completed that particular robbery?

A. Yes, sir....

II R. 64–65. Agent Moore similarly testified regarding defendant's confession. *Id.* at 73–76.

**14.** On brief, the Government argued that defendant waived his right to a § 3501 hearing by not filing a pretrial motion to suppress the confession pursuant to Fed.R.Crim.P. 12(b). Brief of Appellee at 14–16. At argument, however, the Government abandoned this position.

We are satisfied that the circumstances required a hearing in this case. The defendant orally moved to suppress before trial began, he objected to the admission of the confession when it was offered, and the testimony did give some indication of intoxication. *E.g.,* II R. 63, 79–80. The combination of these circumstances convinces us that the hearing should have been held, particularly where constitutional and statutory protections were involved. *See United States v. Renteria,* 625 F.2d 1279, 1282–83 (5th Cir.1980).

**15.** 18 U.S.C. § 3501(a) (emphasis added).

relief regardless of the substantiality of other evidence of guilt. There is no harmless error when an involuntary confession is involved."), *aff'd,* 469 F.2d 1394 (9th Cir. 1972) (per curiam). And we must observe further that it is difficult to conclude with assurance that a defendant's confession does not have a telling impact on a jury in any case.

Third, the Supreme Court has held that before a confession, challenged as to its voluntariness, may be used at trial, the trial judge's conclusion that the confession was voluntarily given must appear from the record with "unmistakable clarity." *Sims v. Georgia,* 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967). In certain cases, courts applying this standard have held that a trial judge's ruling following a § 3501 hearing lacked the requisite specificity. *See, e.g., United States v. Brown,* 575 F.2d 746, 748 (9th Cir.1978) ("[T]he record does not affirmatively state that [the trial judge] considered the effect of [defendant's alleged] intoxication on the voluntariness issue."); *United States v. Goss,* 484 F.2d 434, 436 (6th Cir.1973) (Trial judge, in rejecting defendant's motion to suppress confession on grounds that it was involuntary, stated only that "[t]he motion is overruled."). These courts have held that inadequate support for the trial judge's ruling on voluntariness does not constitute harmless error. *See Brown, supra,* 575 F.2d at 748 ("We cannot say that such an error would be harmless beyond a reasonable doubt."); *Goss, supra,* 484 F.2d at 437 ("[W]e are not at liberty to employ the harmless error rule."). It would be anomalous to hold that the failure to hold a § 3501 hearing is harmless error in light of the requirement that a trial judge's conclusion after a § 3501 hearing appear from the record with "unmistakable clarity." This approach would treat the failure to hold *any* hearing as a less severe constitutional deprivation than the failure to adequately explain a trial judge's ruling *after* a hearing was held.

For these reasons, we hold that the failure to hold the § 3501 hearing was not harmless error.[16] We cannot hold as a matter of law that defendant's confession was voluntarily given. The proper procedure in such a case is to remand for a hearing on the issue of voluntariness. This procedure is consistent with the disposition of the habeas proceeding in *Jackson v. Denno, supra,* 378 U.S. at 368, 84 S.Ct. 1774, and has been followed in direct federal appeals. *See, e.g., United States v. Renteria,* 625 F.2d 1279, 1283 (5th Cir.1980). Only if the trial judge on remand finds that the confession was voluntary [17] will the initial failure to hold a § 3501 hearing have been clearly harmless.[18]

## VI

Accordingly, we hold that there was no error with respect to any of the issues

---

**16.** *But cf. United States v. Groce,* 682 F.2d 1359, 1365 (11th Cir.1982) ("[I]n light of the overwhelming evidence supporting conviction, if any error occurred in [refusing to give jury instruction under § 3501,] it was harmless."); *United States v. Fuentes,* 563 F.2d 527, 536 (2d Cir.1977) (Where "[G]overnment adduced considerable proof of [defendant's] guilt, wholly independent of his post-arrest statements," failure of trial judge to give jury instruction on voluntariness of confession under § 3501(a) constitutes harmless error.).

**17.** Because remand may result in a finding that the confession was voluntary, we reject the Seventh Circuit's position that a new trial, rather than a remand for a hearing on the issue of voluntariness, is required. *United States v. Johnson,* 409 F.2d 861, 862–63 (7th Cir.1969) ("To relegate defendant in the present case to a hearing on the issue of involuntariness ... would in effect make the decision optional with the trial judge in future cases.").

**18.** This result is consistent with § 3501(a), which states that if the trial judge finds the confession to be voluntary, "it shall be admitted into evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct jury to give such weight to the confession as the jury feels it deserves under all the circumstances." 18 U.S.C. § 3501(a). The trial judge here did not prevent defendant from introducing evidence at trial regarding the voluntariness of the confession, and tendered, at defendant's request, a jury instruction regarding the voluntariness of the confession. II R. 94–95, 106–07.

presented except the failure to hold a hearing on the voluntariness of defendant's confession and the admission of it in evidence without such a determination. The cause is remanded for the holding of the hearing required by 18 U.S.C. § 3501. If the district court finds the confession involuntary, the court will then set aside the conviction and sentence and order a new trial at which the confession must be excluded; if the court finds the confession voluntary, the conviction and sentence shall remain in force and effect.