**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ronnie Darnell MILLER,
Defendant–Appellant.**

**Nos. 91–6347, 92–6135.**

United States Court of Appeals,
Tenth Circuit.

March 1, 1993.

Duke Holden, Oklahoma City, OK, for defendant-appellant.

Frank Michael Ringer (Joe Heaton, U.S. Atty., with him on the brief), Asst. U.S.

Atty., Oklahoma City, OK, for plaintiff-appellee.

Before TACHA and EBEL, Circuit Judges, and O'CONNOR, District Judge.*

TACHA, Circuit Judge.

Ronnie Miller appeals his conviction for possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846. Mr. Miller was indicted along with six other people for his involvement in a conspiracy to traffic cocaine from Los Angeles to Oklahoma City. He was arrested in Oklahoma on February 19, 1991. The cases against Miller and four codefendants were consolidated for trial. Miller was sentenced to 324 months imprisonment and five years supervised release.

On appeal, Miller argues that there was insufficient evidence to support his conviction and that the district court erroneously applied the United States Sentencing Guidelines and denied his motion for a new trial. We exercise jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742 and affirm.

## I. SUFFICIENCY OF EVIDENCE

To review the sufficiency of the evidence supporting a criminal conviction, we examine the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Grimes*, 967 F.2d 1468, 1472 (10th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 355, 121 L.Ed.2d 269 (1992). Mr. Miller asserts that the only evidence supporting his conviction was an involuntary statement of confession that should have been suppressed and unreliable accomplice testimony offered to corroborate his statement. He does not argue that his statement, if properly admitted, was insufficient to support the conviction.

Miller's statement was entered through the testimony of an arresting officer on the fourth day of trial. Miller, through counsel, did not object to admission of the statement when it was offered, but did move to suppress the statement for involuntariness at the conclusion of his cross examination. After determining that no pretrial suppression motion had been filed, the court denied the motion without conducting a hearing to determine whether the statement was voluntary.

The requirement for a hearing on the voluntariness of a defendant's confession, articulated in *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), is codified at 18 U.S.C. § 3501(a). That subsection provides that voluntary confessions are admissible but that, before a "confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness." 18 U.S.C. § 3501(a). Section 3501(a), however, does not impose a duty on the trial court to hold a hearing when the question of voluntariness is not timely raised. *See United States v. Knezek*, 964 F.2d 394, 397–99 (5th Cir.1992); *United States v. Mendoza–Acevedo*, 950 F.2d 1, 2–3 (1st Cir.1991); *United States v. Wilson*, 895 F.2d 168, 172–73 (4th Cir.1990). Under Rule 12 of the Federal Rules of Criminal Procedure, motions to suppress evidence must be made prior to trial, Fed.R.Crim.P. 12(b)(3), and the failure to bring a pretrial motion constitutes a waiver, Fed.R.Crim.P. 12(f). The district court, however, may grant relief from the waiver for cause shown. *Id.*

We have held that § 3501(a) mandates a hearing when a question of voluntariness is raised orally before trial and again at the time the confession is offered. *See United States v. Janoe*, 720 F.2d 1156, 1164 (10th Cir.1983), *cert. denied*, 465 U.S. 1036, 104 S.Ct. 1310, 79 L.Ed.2d 707 (1984). In *Janoe*, we noted that, although the government had argued in its brief that the defendant waived his right to a *Jackson v. Den-*

---

* Honorable Earl E. O'Connor, Senior District Judge, United States District Court for the Dis-  trict of Kansas, sitting by designation.

*no* hearing under Rule 12(f) by failing to file a pretrial motion to suppress, it had abandoned that position at oral argument. *Id.* at n. 14. Consequently, we did not address the implications of Rule 12 on the district court's duty to hold a hearing. Nonetheless, we did consider the timing of the motion in deciding that a hearing was required under the circumstances because the defendant moved to suppress his confession before the trial actually began, objected to admission of the confession when it was offered, and presented some evidence of intoxication. *Id.*

The circumstances in the present case differ from those in *Janoe.* Miller did not move to suppress his statement until the fourth day of trial after it had already been admitted, did not object to its admission when it was offered, and made no explanation for his failure to file a timely motion. Under the circumstances, we find no evidence to support relief from waiver under Rule 12(f). *See United States v. Gonzales,* 749 F.2d 1329, 1336 (9th Cir.1984). We hold that the district court did not err in denying Miller's untimely motion to suppress without holding a *Jackson v. Denno* hearing and affirm the admission of Miller's confession.

■ Miller also argues that the accomplice testimony offered to corroborate his statement lacked credibility. We must rely on the district court's findings regarding witness credibility unless they are clearly erroneous. *United States v. Ibarra,* 955 F.2d 1405, 1409 (10th Cir.1992). After reviewing the record, we find that the testimony was corroborated in part by the search warrant and a police officer's testimony about the surveillance and arrest. Moreover, a conviction based on accomplice testimony may be affirmed if the district court properly instructed the jury that accomplice testimony must be carefully scrutinized, weighed with great care, and received with caution. *See United States v. Shepherd,* 739 F.2d 510, 512–13 (10th Cir. 1984). Here the district court instructed the jury that "the testimony of an accomplice alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilty, even though not corroborated or supported by other evidence. However, the jury should keep in mind that such testimony is always to be received with caution and weighed with great care."

We conclude that Miller's statement is independently sufficient to support his conviction and that the jury was properly instructed regarding the corroborating accomplice testimony.

## II. SENTENCING

■ Miller contends that the district court erred by adding criminal history points under U.S.S.G. § 4A1.1(b) for offenses he committed as a juvenile pursuant to § 4A1.2(d)(2)(A). United States Sentencing Commission, *Guidelines Manual,* §§ 4A1.1(b) and 4A1.2(d)(2)(A) (Nov.1992). We review the district court's factual findings for clear error and its interpretation of the Guidelines de novo. *United States v. Pinedo–Montoya,* 966 F.2d 591, 595 (10th Cir.1992).

■ Miller points to an apparent conflict between two subsections of U.S.S.G. § 4A1.2. Subsection (c)(2) states that sentences for "juvenile status offenses" are never counted, U.S.S.G. § 4A1.2(c)(2), while subsection (d)(2)(A) provides for a two point increase for "each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense," *id.* § 4A1.2(d)(2)(A). We find no conflict between these provisions.

■ Juvenile convictions, other than for status offenses, may be used to add points to a defendant's criminal history category pursuant to § 4A1.2(d)(2). *United States v. Baker,* 961 F.2d 1390, 1392–93 (8th Cir.1992). The Guidelines do not define "juvenile status offenses" as used in § 4A1.2(c)(2), but the term has been construed to mean those offenses, such as truancy or loitering, where otherwise legal conduct is criminalized only because of the actor's status. *See e.g. United States v.*

*Unger,* 915 F.2d 759, 763 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1005, 112 L.Ed.2d 1088 (1991). In contrast, § 4A1.2(d)(2) applies to offenses for conduct that is criminalized regardless of one's status, but which the defendant committed prior to age eighteen. U.S.S.G. § 4A1.2(d), comment. (n.7). Miller's juvenile adjudications—for possession of cocaine and unlawful use of a vehicle—are not juvenile status offenses. He served a sentence exceeding 60 days in a youth camp and was released within five years of commencing the instant offense. The district court did not err in interpreting § 4A1.2 or computing Miller's criminal history.

## III. NEW TRIAL

Finally, Mr. Miller appeals the district court's order denying his motion for a new trial based on newly discovered evidence without conducting an evidentiary hearing. Miller based the motion on two affidavits in which one of the government's chief witnesses, Raymond Johnson, recanted his trial and Grand Jury testimony. We review the denial of a motion for new trial for an abuse of discretion. *United States v. Page,* 828 F.2d 1476, 1478 (10th Cir.), *cert. denied,* 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987).

■ A motion for a new trial is not viewed with favor and should be granted with great caution. *United States v. Thornbrugh,* 962 F.2d 1438, 1443 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 220, 121 L.Ed.2d 158 (1992). It is well established that newly discovered evidence warrants a new trial only if the defendant shows:

> (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.

*United States v. Stevens,* 978 F.2d 565, 570 (10th Cir.1992). Where, as here, the new evidence is a recantation of trial testimony, "the trial court must first be satisfied that the challenged testimony was actually false." *United States v. Bradshaw,* 787 F.2d 1385, 1391 (10th Cir.1986).

■ To make this determination, the trial court ordinarily must hold an evidentiary hearing to determine the credibility and effect of the recantation. *Page,* 828 F.2d at 1478. The determination of a witness's credibility is a matter for the trial court rather than the appellate court, and we must be able to "discern from the record whether or how the trial judge evaluated the credibility of [a witness's] recantation." *United States v. Ramsey,* 726 F.2d 601, 605 (10th Cir.1984) (*Ramsey I*). In *Ramsey I,* the trial court denied the defendant's motion for a new trial without conducting an evidentiary hearing and without making any findings of fact. *Id.* at 604. It was only after we remanded the case to the district court to make the necessary findings that we affirmed its denial of the motion. *United States v. Ramsey,* 761 F.2d 603, 604 (10th Cir.1985) (*Ramsey II*), *cert. denied,* 474 U.S. 1082, 106 S.Ct. 851, 88 L.Ed.2d 892 (1986). On remand, the district court held an evidentiary hearing at which the witness repudiated his recanting affidavit and testified that his trial testimony was true. *Id.*

■ In its order denying the motion, the district court acknowledged that it ordinarily must conduct an evidentiary hearing to evaluate a recantation, but it determined that a hearing was not required under the circumstances of this case. Johnson had recanted his testimony in signed affidavits dated October 30, 1991. On November 12, 1991, he signed an affidavit repudiating his prior recantation, stating that he had testified truthfully about Miller's involvement and signed the prior affidavits out of fear.

The repudiating affidavit explains that Miller and Codefendants J.C. Chatman, Charles McIntyre, and Kenneth Wright ap-

proached Johnson in his prison cell to discuss why he had testified against Miller and Chatman. It states in part:

> They proposed I sign a statement saying I had given false testimony at trial. They went and wrote up something, brought it back, and let me read it. I signed the statement not because it was true but because I felt it was the only way to keep them from harrassing [sic] me and jumping me, then or later. The next day, one of them commented, "Did my son still live on Crenshaw?" I took this as a potential threat to my son because they knew where he lived.

The timing of Johnson's repudiating affidavit, which was signed more than two months before Miller filed his motion for new trial, convinced the court that Johnson informed prison authorities or the United States Attorney of the confrontation as soon as possible.

Based on this evidence, the district court determined that Johnson's trial testimony was truthful and that his recantation was coerced and did not warrant a new trial. The district judge also concluded that the relevant witnesses had been dispersed to different correctional facilities and that no purpose would be served by requiring them to appear for an evidentiary hearing. We hold that, even absent an evidentiary hearing, the record is adequate for us to discern that the district court evaluated the credibility of Johnson's recantation and we find no abuse of discretion.

AFFIRMED.