**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 16, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

JUAN GONZALES,

        Defendant-Appellant.

No. 06-2112

(D. New Mexico)

(D.C. No. CR-04-2573-JC)

ORDER AND JUDGMENT[*]

Before **HENRY**, **HARTZ,** and **HOLMES**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Juan Gonzales pleaded guilty to possession with intent to distribute at least 5 grams or more of a mixture containing cocaine base, in violation of 21 U.S.C. §

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

841(a)(1), (b)(1)(B), and carrying and possessing a firearm in relation to and in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). He was sentenced to 60 months' imprisonment on each count. In his conditional plea, he preserved his right to appeal the district court's denial of his (1) motion to suppress, and (2) motion to disclose the identity of a confidential informant. Mr. Gonzales also raises an ineffective assistance of counsel claim. We hold that the district court did not abuse its discretion when it dismissed Mr. Gonzales's belated pretrial motions. We decline to address the ineffective assistance claim on direct appeal, and therefore, we affirm Mr. Gonzales's conviction.

## I. BACKGROUND

On December 29, 2004, a federal grand jury returned a four-count indictment against Mr. Gonzales, which charged him with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 1), possession with intent to distribute at least 5 grams or more of a mixture and substance containing cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count 2), possession with intent to distribute less than 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 3), and carrying and possessing a firearm in relation to and in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count 4).

## A. Officer Guenther's Affidavit

On December 4, 2004, Officer Tank D. Guenther of the Albuquerque Police Department (APD) applied for a warrant to search the premises at 245 Glorieta NE in Albuquerque. Officer Guenther's affidavit in support of his application for a search warrant stated that he had received information from a confidential source (CS) that from "its several personal observations within the past four months an individual named 'Juan' was selling large amounts of illegal drugs and had been doing so for a long period of time from the residence described . . . ." Aple's Br. att. 1, at 2 (Affid. of Tank D. Guenther, dated Dec. 4, 2004).

Officer Guenther averred that within the last 52 hours, the CS had assisted in a controlled buy from the residence at 245 Glorieta NE. He then described the procedure used in carrying out the controlled buy and explained that the CS was "working off criminal charges," and that the CS had been told that if he/she provided false information, the CS would be prosecuted. *Id*. State District Judge James F. Blackmer issued a search warrant authorizing the search.

## B. The Offense Conduct

Four days after officers procured the search warrant, on December 8, 2004, APD officers and Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) along with Immigration and Custom Enforcement (ICE) agents executed it. As the police and agents approached the front door at 245 Glorieta NE, they saw someone looking out the window. They immediately entered the residence and

identified themselves as police officers with a search warrant. As they entered, the officers saw Mr. Gonzales run from the living room to the kitchen. The officers ordered him to place his hands in the air and to get down on the floor. Instead of complying with the officers' commands, Mr. Gonzales placed his hands into the kitchen sink. The officers subdued Gonzales after a brief struggle.

The search of the residence disclosed 15.63 net grams of cocaine base and 23.70 net grams of cocaine powder. Officers also seized a Smith and Wesson .38 special caliber revolver which they found in a kitchen cabinet.

The officers interviewed Mr. Gonzales's girlfriend, who resided with Mr. Gonzales. She told the police that, at the time of the raid, Mr. Gonzales had been cooking crack cocaine. She stated that he took the firearm with him when he went to sell drugs and that Mr. Gonzales usually sold the drugs two blocks from their residence. Mr. Gonzales contends that she also stated that the couple lived at 245 Glorieta NE for a month or less.

## C. Mr. Gonzales's Attorneys

On December 9, 2004, the district court appointed counsel to represent Mr. Gonzales. On March 7, 2005, the district court, at Mr. Gonzales's request, allowed her to withdraw and ordered that Mr. Gonzales be appointed new counsel. On March 8, 2005, the district court appointed new counsel. On August 11, 2005, Mr. Gonzales again requested that new counsel be appointed. After reviewing the motion for new counsel and Mr. Gonzales's letter to the court, and

after hearing argument from defense counsel and Mr. Gonzales, the district court permitted Mr. Gonzales's second counsel to withdraw.

The district court then ordered that new counsel be appointed and that he or she be fluent in Spanish and be prepared to proceed to jury selection and trial on October 11, 2005. On August 17, 2005, the district court appointed James E. Bierly to represent Mr. Gonzales.

**D. The Pre-Trial Filings**

Mr. Gonzales filed a motion to suppress the evidence and a motion to disclose the identity of the confidential source on Friday, October 7, 2005, one working day (given the federal holiday on October 10) before the trial was to begin (Tuesday, October 11, 2005). The next day, on October 8, the government responded to both motions.

In his motion to suppress evidence, Mr. Gonzales alleged that Officer Guenther, the affiant, had inserted two false statements either intentionally or with reckless disregard for the truth in his affidavit in support of the search warrant application. The two statements Mr. Gonzales alleged to be false were: (1) "that a confidential source (CS) had informed APD that 'within the last 52 hours' . . . it [sic] had purchased suspected cocaine 'from an individual it [sic] knew as 'Juan' from the residence to be searched (245 Glorietta SE [sic])"; and (2) "that an 'an individual named 'Juan' was selling large amounts of illegal drugs' 'within the past four months' from that same residence." Rec. vol. I, doc.

48, ¶¶ 2, 3.  Mr. Gonzales also claimed that if this information were redacted from the affidavit, the remaining information did not state probable cause for the issuance of the warrant.

Mr. Gonzales offered "to take a polygraph examination and/or testify to prove that he never sold cocaine or any other drug from 245 Glorietta SE [sic]; neither in the 52 hours preceding the issuance of a warrant . . . nor at any other time."  *Id.* ¶ 6.  Mr. Gonzales claimed that "there appears to be serious credibility problems regarding the CS" and that "the existence of the CS is  fiction."  *Id.* ¶¶ 10, 7.

In its response to Mr. Gonzales's motion to suppress, the government argued that the motion was untimely because the motion had been filed one working day prior to trial.  Both parties note that the district court set a deadline for filing pretrial motions ten business days before trial.[1]

The government also argued that Mr. Gonzales was not entitled to a hearing regarding the allegedly false information contained in the affidavit supporting the

---

[1] We note that the district court's scheduling order set a deadline for filing motions in limine no later than ten business days prior to jury selection, which was scheduled for October 11, 2005.  There is no dispute that the subject motions are not motions in limine.  The date by which pre-trial motions were to have been filed would normally be much earlier than ten business days before trial and may have been as early as February 25, 2005 in this case.  However, because the parties agree that the motion-in-limine scheduling order was the operative one as to substantive pre-trial motions as well, and since that construction is more generous to the defendant, we use the motion-in-limine deadline of ten business days before trial as the operative one for purposes of our Rule 12(e) analysis.

application for a warrant, *see Franks v. Delaware*, 438 U.S. 154 (1978), because: (1) Mr. Gonzales had failed to submit affidavits or reliable statements of witnesses in support of his allegations of false statements in Officer Guenther's affidavit; (2) Mr. Gonzales was focusing on the informant's credibility and not Officer Guenther's; (3) probable cause existed without the informant's statements; and (4) even if the district court was to determine that the search warrant was invalid, the *United States v. Leon*, 468 U.S. 897 (1984), good-faith exception applied. *See* Rec. vol. I, doc. 51, at 2-6.

In his motion for disclosure of the confidential informant, Mr. Gonzales acknowledged that there was no absolute right to require disclosure of an informant's identity but argued that the CS's "testimony would be highly relevant, and could throw possible doubt onto, the identity of the person who was alleged to have been selling drugs from the residence for four months, and whether in facts [sic] drugs were being sold from that house for that time period . . . ." *Id*. doc. 49, ¶ 16. In opposition to Mr. Gonzales's motion to disclose the CS, the government argued: (1) the motion was untimely; (2) the controlled buy monitored by APD officers and ATF agents established the CS's credibility and, thereby, obviated any need to disclose the informant's identity; and (3) the informant did not witness or participate in the circumstances giving rise to the charges in the indictment. Rec. doc. 50, at 1-4.

On the day of trial, Mr. Gonzales filed a reply to the government's responses. Mr. Gonzales claimed his girlfriend had told the police that she and Mr. Gonzales "had only been in the residence one month." Rec. vol. I, doc. 52 ¶ 1. Mr. Gonzales argued that "[t]his directly contradicts the testimony in the affidavit (regarding the CS knowing 'Juan' to have been selling from the residence for four months)." *Id.* As to Mr. Gonzales's request to disclose the identity of the CS, Mr. Gonzales said, "Although the CS was not a witness (to Defendant's knowledge at this time) regarding the drugs located inside the residence searched, it was the only witness regarding any activity which permitted the search warrant to issue. Therefore, its disclosure is crucial." *Id.* ¶ 4.

## E. District court proceedings

On the morning of trial, the district court denied Mr. Gonzales's motions as being both untimely and lacking merit. After the district court denied his motions, Mr. Gonzales changed his plea to Counts 2 and 4 of the indictment. Pursuant to a plea agreement, he entered a conditional guilty plea to Counts 2 and 4. On March 29, 2006, the district court sentenced him to two 60-month terms of imprisonment, to be served consecutively.

## II. DISCUSSION

Mr. Gonzales argues that the district court erred in denying his motion to suppress and his motion to disclose the identity of the CS. He also argues that the district court, when it dismissed these motions as untimely, failed to recognize

that he had established cause and prejudice for the belated filings. Finally, Mr. Gonzales contends that he received ineffective assistance of counsel when his counsel filed the untimely motions. For the reasons that follow, we affirm the district court's conclusions and decline to address the ineffective assistance of counsel claim.

**A. The dismissal of the pretrial motions as untimely**

We review the district court's decision to decline to hear untimely pretrial motions for an abuse of discretion. *United States v. Booker*, 952 F.2d 247, 249 (9th Cir. 1991) ("A district court's decision to decline to hear an untimely suppression motion is reviewed for abuse of discretion."). A defendant must move to suppress evidence prior to trial. FED. R. CRIM. P. 12(b)(3)(C). A district court may set a deadline by which parties must make all pre-trial motions, FED. R. CRIM. P. 12(c); and, further, "[a] party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides. For good cause, the court may grant relief from the waiver." FED. R. CRIM. P. 12(e); *see United States v. Miller*, 987 F.2d 1462, 1464 (10th Cir. 1993) (stating that "the district court . . . may grant relief from the waiver for cause shown").

In Mr. Gonzales's case, as noted above, the parties agree that any pretrial motions were required to be filed at least ten business days in advance of trial. Mr. Gonzales filed his motions on October 7, 2005, one business day before his

trial was set to begin on the following Tuesday. Thus, under the explicit language of Rule 12 and the court's scheduling order, Mr. Gonzales waived his right to move to suppress and to seek the identity of the CS.

Mr. Gonzales does not argue that the facts upon which his motions relied could not have been fully discovered by the date set for these motions. He does argue that the district court should have inquired whether there was good cause for the untimely motions before summarily dismissing them. Had the court done so, he contends, it would have recognized that the eight continuances during the course of Mr. Gonzales's representation by two separate counsel resulted in the filing of no substantive motions on his behalf. He argues that "[t]he issues in the[ present] motions were, essentially, Mr. Gonzales'[s] only legal defense." Aplt's Br. at 34. Mr. Gonzales suggests that the district court should have exercised its discretion to hear his untimely motions "in the furtherance of justice." *Id.* at 35.

Mr. Gonzales relies on *United States v. Janoe*, 720 F.2d 1156, 1164 (10th Cir. 1983), but that case is inapposite: "In *Janoe*, we noted that, although the government had argued in its brief that the defendant waived his right to a . . . hearing under Rule 12[e] by failing to file a pretrial motion to suppress, [the government] had *abandoned* that position at oral argument." *Miller*, 987 F.2d at 1465 (emphasis added). As in *Miller*, "the circumstances in the present case differ from those in *Janoe*" because the government never abandoned its position that the motions were untimely. Thus, "[w]e find no evidence to support relief

-10-

from waiver under Rule12[e]." *Id.*

When the district court appointed Mr. Bierly in August 2005, it informed him that there would be no more continuances and to be prepared for trial beginning in October 2005. Mr. Gonzales did not indicate that he disagreed with his counsel's tactics before trial. There is no cause given for the belated filings, apart from Mr. Gonzales's present contention of ineffective assistance of counsel, which we address below. Moreover, the district court also dismissed the motions on the merits, further undermining Mr. Gonzales's argument. Accordingly, we hold that the district court did not abuse its discretion when it determined that Mr. Gonzales's motion to dismiss and motion to disclose the identity of the confidential informant were untimely.

**B. Ineffectiveness of counsel**

In this circuit, except in rare circumstances, ineffective assistance of counsel claims must be presented in collateral proceedings. *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc). On direct appeal ineffective assistance of counsel claims are "presumptively dismissible, and virtually all [such claims] will be dismissed." *Id.* This rule allows a district court to develop the factual record necessary for effective review. *See Massaro v. United States*, 538 U.S. 500, 505-06 (2003) ("The trial record may contain no evidence of alleged errors of omission, much less the reasons underlying them."). The present claim does not fall into the narrow category of cases that requires no

further development and are therefore suitable for review on direct appeal. *Cf.*
*United States v. Smith*, 10 F.3d 724, 728 (10th Cir. 1993) (deciding an ineffective
assistance of counsel claim on direct appeal where defense counsel averred to
mistakenly omitting a jury instruction on a lesser included offense). If Mr.
Gonzales wishes to pursue this claim further, he must do so in a collateral
proceeding under 28 U.S.C. § 2255.

### III. CONCLUSION

Accordingly, we AFFIRM Mr. Gonzales's conviction.

Entered for the Court,

Robert H. Henry
Circuit Judge